The defendant Antonio Mangino and his wife were the owners, as tenants by the entirety, of real estate situate in this state and she was also the owner in her name alone, of of two bonds and mortgages. The complainants are their only children and they charge in their bill of complaint that *Page 293 
on July 5th, 1930, Mangino murdered his wife and that she died intestate. They allege that he should not be permitted to profit by his criminal act and take an absolute fee-simple in the real estate of which he and his wife were tenants by the entirety, or any interest in the personal property of which she died possessed, and they pray that they be adjudged the legal owners of such real estate, subject to his life interest therein and of said personal property, as the sole heirs at law and next of kin of their mother. They further pray that Mangino be enjoined from asserting sole ownership to said lands and from conveying the same and from asserting any interest in said personal property, and for such other relief as they may be entitled to. A preliminary restraint was granted against Mangino, enjoining him from disposing of or encumbering the real estate.
The complainants must first establish that Mangino murdered his wife. At the hearing of this cause there was offered and admitted in evidence the record of Mangino's indictment for murder, the trial before the Hudson over and terminer, his conviction January 20th, 1931, of murder in the second degree and his sentence to state prison. The testimony before me showed that the deceased was killed in her home late at night, or in the early morning hours, after she and Mangino had returned home from a visit to one of the complainants, throughout which visit they appeared to be on friendly terms. Beside the record of the criminal proceedings the only evidence to prove the murder was given by Mangino's son, one of the complainants, who testified before me that the deceased was killed by a bullet wound; that Mangino said, in the witness' hearing, that robbers had shot her; that at the trial on his indictment Mangino testified that he and the deceased had a struggle over the possession of a revolver and that it went off and shot her; that Mangino and the deceased had frequent quarrels and three years prior to the shooting Mangino had threatened to kill his wife. Mangino was in court at the hearing before me, on a habeas corpus ad testificandum obtained by his counsel, but was not called as a witness. Leaving out of consideration *Page 294 
for the moment the record of Mangino's conviction, it is obvious that there was insufficient evidence before me to establish that Mangino had murdered his wife and the question is: Is the record of his conviction admissible to prove the charge?
We have in our Crimes act the following section:
"Nothing in any of the sections of this act contained, nor any proceeding, conviction or judgment to be had or taken thereon against any person, under any of the said sections, shall prevent, lessen or impeach any remedy at law or in equity which any party aggrieved by any offense against any of the said sections might have had if this act had not been passed; but no conviction of any such offender shall be received in evidence in any action at law or in equity against him." Comp. Stat. p.1813 § 221.
It is stated in Kowalski v. Director-General,93 N.J. Law 340; affirmed, 96 N.J. Law 293, that the record of conviction in a criminal case is not evidence in a civil suit of the truth of the commission of the crime.
Stewart v. Stewart, 93 N.J. Eq. 1, an uncontested suit for divorce on the ground of adultery, holds that the record of the trial of the defendant before the Passaic quarter sessions on a charge of adultery, wherein the record showed that the defendant pleaded guilty, was competent as evidence of an admission by the defendant that he had committed adultery.
Tucker v. Tucker, 101 N.J. Eq. 72, was also an uncontested suit for divorce on the ground of adultery wherein the proof of guilt was the record of conviction of the defendant and the co-respondent in the Essex special sessions on a joint charge of adultery, the record showing that the defendant was convicted after trial and that the co-respondent pleaded guilty. In accepting the record as evidence the court said that the defendant's failure to defend the divorce suit might be taken as a confession of guilt and that the record of his conviction in the criminal case could be taken to satisfy the chancellor's conscience that a decree for divorce against the defaulting defendant was justified. But the court also said that the record was not accepted as res adjudicata and that it is the rule that a conviction in a criminal prosecution is *Page 295 
not admissible in a purely civil action to establish the truth of the facts on which it is rendered.
I can understand why the record of acquittal in a criminal case should not bind a person who seeks to enforce in a civil court, a right growing out of or resulting as a consequence of the same occurrence, because conviction may have failed for the reason that the guilt of the accused was not proved beyond a reasonable doubt and I apprehend that that situation was intended to be guarded against by our statute to which I have referred, but when the question of the guilt of the accused has been judicially litigated and determined adversely to him under conditions most favorable to him, that is, by a jury of his peers who must assume him to be innocent until his guilt is proven beyond a reasonable doubt, and such guilt is the very question presented in the civil suit, it seems to me that the record of his conviction should be received in the civil suit as, at least, prima facie evidence of guilt. The cases for and against the admission, in a civil suit, of the record of conviction on a criminal charge, as evidence of the guilt of the defendant are collected in11 L.R.A. 653; 31 L.R.A. 670 and 57 L.R.A. 490, but in this state the question is settled by our statute, which I must recognize and by precedents which I must follow and consequently I must hold that the record of Mangino's conviction of murder is not admissible here to prove the crime and there being insufficient evidence produced before me to prove his guilt, the complainant's bill against him must fail.
It should be added that Mangino has an appeal pending from his conviction. If the record of conviction were admissible evidence against him in this case it would, however, be manifestly inequitable to advise a final decree against him while his appeal is pending, but should it appear that the complainants are entitled to relief of the nature for which they pray, a way would be found to preserve the present status of the real and personal property involved, until the appeal is decided.
After Mrs. Mangino's death, Schwartz, the other defendant herein, contracted to purchase the real estate in question *Page 296 
from Mangino and he claims to have paid $1,000 on account of the purchase price. The bill of complaint having failed as to Mangino it must also fail as to Schwartz.
On the main question raised by the complainants' bill, I have found no reported case in this state. I have given it some investigation and consideration and with the thought that decisions rendered by courts of other states may be of future assistance to our bench and bar, I append a reference to those I have read. The courts are divided, there being three lines of decision.
1. The legal title passes to the murderer and may be retained by him in spite of his crime, for all or one of the following reasons: (a) the devolution of property of an intestate is controlled entirely by the statutes of descent and distribution and, in cases of tenancy by the entirety by the nature of the estate as originally created; (b) denial of inheritance to an heir, or to the survivor in case of tenancy by the entirety, because of his crime, is punishment for the crime in addition to his sentence, and (c) would violate the constitutional provision against corruption of blood. Carpenter's Estate, 170 Pa. 203;Wall v. Pfanschmidt, 265 Ill. 180; McAllister v. Fair,72 Kan. 533; Beddingfield v. Estill, 118 Tenn. 39; Gollnik v.Mengel, 112 Minn. 349; In re Kirby, 162 Cal. 91; Holloway v.McCormick, 41 Okla. 1; Hagan v. Cone, 21 Ga. App. 416;Eversole v. Eversole, 169 Ky. 793; Shellenberger v. Ransom,41 Neb. 631.
2. The legal title will not pass to the murderer because of equitable rules and principles that no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or found any claim upon his own iniquity, or profit by his own crime. Riggs v. Palmer, 115 N.Y. 506; Perry v. Strawbridge,209 Mo. 621; In re Tyler, 140 Wn. 679.
3. The legal title passes to the murderer, but equity will treat him as a constructive trustee because of the unconscionable mode of its acquisition and compel him to convey it to the heirs, or next of kin of the deceased, exclusive of the murderer.Ellerson v. Westcott, 148 N.Y. 149; Van *Page 297 Alstyne v. Tuffy, 169 N.Y. Supp. 173; In re Santourian'sEstate, 212 N.Y. Supp. 116; Bryant v. Bryant, 193 N.C. 372;Barnett v. Couey (Mo.), 27 S.W. Rep. (2d ser.) 757.
Instructive articles on the subject are to be found in 44Harvard Law Review, No. 1, p. 125, and 8 New York UniversityLaw Quarterly Review, No. 3, p. 492.
The only view I feel at liberty to express is that the real solution of the question lies with the legislature by the enactment of a statute depriving a murderer, under all situations, from acquiring property by or as a consequence of his crime.