14 N.J. Super. 479 (1951)
82 A.2d 471
ALBERTA A. NEIMAN, EXECUTRIX UNDER THE WILL OF EDITH KOLLMER HURFF, DECEASED, AND DAMON RUNYON MEMORIAL FUND FOR CANCER RESEARCH, INC., A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFFS,
v.
F. EARL HURFF, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 3, 1951.
*480 Mr. Carl Kisselman, attorney for the plaintiffs.
Mr. Mark Marritz (Mr. William J. Shepp, of counsel), attorney for the defendant.
HANEMAN, J.S.C.
The plaintiff herein seeks a construction of the will of Edith Kollmer Hurff, to the end that this court may determine in whom certain realty and personalty vested upon her death. The plaintiff seeks as well a judgment for $2,500 allegedly loaned to the defendant.
*481 The defendant, in addition to contending that title to the realty and personalty particularly described in the complaint vested in him at his wife's death, and denying that he owed his wife any sum in excess of $500, contends that he is entitled to a lien to the extent of $1,771 against various shares of stock jointly held by them, this being the amount of money advanced by him for their purchase, and that he has title to certain shares of building and loan stock, since he paid the entire purchase price therefor.
The facts in connection herewith are as follows: On July 31, 1950, the deceased and the defendant were husband and wife. The deceased met her death at the hands of the defendant, who later pleaded non vult to an indictment for second degree murder. At the time of her death, Edith Kollmer Hurff left a last will and testament in which the sole residuary beneficiary was designated "Damon Runyon Cancer Fund." It is admitted that the deceased intended to designate the "Damon Runyon Memorial Fund for Cancer Research, Inc.," as such beneficiary. During her lifetime, the deceased and defendant held title to a parcel of realty as tenants by the entirety, and to a number of shares of corporate stock, in the following manner: (1) 10 shares of Bank of America, as follows: "Frank E. Hurff and Edith Kollmer Hurff, Jt. Ten."; (2) various other stocks, as follows: "Frank E. Hurff and Edith Kollmer Hurff as joint tenants with the right of survivorship and not as tenants in common." There is no proof as to the manner in which 20 shares of Collingswood Building and Loan Association were held and I cannot pass on the title thereto.
The question submitted as to the realty and the corporate stock is whether the title should vest in the defendant, since the wife's death was caused by his felonious act.
The defendant does not dispute that the shares of stock above referred to, excepting the building and loan stock, were held by him and his wife as joint tenants.
There is no legal impediment to the creation of a joint tenancy in personalty. Goc v. Goc, 134 N.J. Eq. 61 *482 (E. & A. 1943). In any event, the form in which title to these shares were taken raises the presumption of an intention to take as joint tenants, which was not rebutted by any evidence. Stiles v. Newschwander, 140 N.J. Eq. 591 (E. & A. 1947). Since such intention to so take has been here affirmatively found, the claim of defendant to a lien must fail.
On the major question of the effect of the manner of death of the plaintiff's testator there are three cases in this State where this general subject has been considered, i.e., Sorbello v. Mangino, 108 N.J. Eq. 292 (Ch. 1931), Sherman v. Weber, 113 N.J. Eq. 451 (Ch. 1933), and Whitney v. Lott, 134 N.J. Eq. 586 (Ch. 1944).
In Sorbello v. Mangino, supra, and Sherman v. Weber, supra, Vice-Chancellor Fielder set forth the three divergent schools of thought in the law applicable to states of facts comparable to those sub judice. In all of the three foregoing cited cases the courts have held that the legal title will pass as if the death had not been caused by the person benefitting thereby, but that equity will decree that the criminal or those claiming under him will hold the property as constructive trustees.
The defendant contends that such a conclusion violates constitutional provisions, i.e., United States Constitution, 14th Amendment, sec. 1; United States Constitution, Art. I, sec. X, par. 1, clause 1; New Jersey Constitution, Art. I, and R.S. 2:178-2. The latter provides as follows:
"No conviction or judgment for any offense against this State, shall make or work corruption of blood, disinherison of heirs, loss of dower, or forfeiture of estate."
The answer to this argument is found in Sherman v. Weber, supra, as follows:
"Those rules should be applied for the purpose of arriving at an equitable solution of the question here presented; therefore while this husband's criminal act cannot deprive him of the rights he had in the property up to the moment of his wife's death, no higher or *483 greater rights should accrue to him through the commission of a felonious homicide. Had he not killed his wife but had he obtained by any unconscionable act, such as duress or fraud, a conveyance of her right to possession for her life, or a conveyance which accelerated the time of his enjoyment of the fee, this court upon her application would deprive him of the advantage of his act and would restore her interest to her. Had she remained in possession of her half of the property for her natural life, her estate would probably have been increased by the profit which she would have derived through that possession and the husband's crime was a fraud on complainants to whom her estate was bequeathed and devised. Equity will refuse to permit the husband, or those who claim through him, to profit by the murder and will do justice by restoring the property rights, as nearly as may be, as they were at the time the husband slew his wife, adjudging that because of the act through which the husband became seized of the fee, he was trustee thereof for the interest his wife would have had, had he permitted her to live her normal expectancy of life and that while the title in fee was vested in the husband and passed under his will to the defendants, they hold it subject to such trust."
The result attained in that case does not result in a deprivation of a vested estate which defendant had prior to his wife's death nor does it result in a corruption of blood, disinherison of heirs or forfeiture of estate. The title is left as it was found. There is no deprivation of defendant's legal title. The defendant may have, however, no greater or higher rights through the commission of a felonious homicide. He may not profit from his unconscionable mode of acquisition.
Consistent with the law, the defendant is adjudged to hold the legal title as a constructive trustee. There is no proof before me as to the probabilities whether the deceased or her widower would, in the normal course of events, have survived. Such proof I will take on a short day. In the interim, however, the defendant is determined to hold all of the property here involved as such constructive trustee and to receive the rents, issues and profits, and to hold the same intact awaiting the final solution of the propounded questions.
I find as well that there is no proof that any of the balance of the monies claimed as a loan from his wife were actually such, except for the $500, which defendant admitted was a loan to him. The presumption of a loan from wife to *484 husband, arising from the matrimonial relationship fails, in the light of the other evidence, especially that concerning the management and operation of the realty.
Judgment will be entered accordingly.