81 N.J. Super. 435 (1963)
195 A.2d 903
IN THE MATTER OF THE ESTATE OF MICHELE KALFUS AND JANE KALFUS, MINORS, BY THE GUARDIAN OF THEIR PERSON AND PROPERTY, BERNARD NATALINO AND BERNARD NATALINO, ADMINISTRATOR OF THE ESTATE OF DOMENICA KALFUS, DECEASED, PLAINTIFFS,
v.
RICHARD H. KALFUS, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 4, 1963.
*436 Messrs. Capone and Gittleman (Mr. Harold A. Capone, appearing) attorneys for plaintiffs.
Messrs. Parisi, Evers & Greenfield (Mr. Irving Evers, appearing) attorneys for defendant.
PASHMAN, J.S.C.
This is a summary proceeding to determine the curtesy rights and the rights of defendant Richard H. Kalfus under the New Jersey statute of descent and distribution. A brief factual resume is necessary to an understanding of the present controversy.
On November 20, 1962 Domenica Kalfus was murdered by her defendant husband. Domenica died intestate. Following a plea defendant was sentenced to the New Jersey State Prison, where he is presently confined, for a term of 15 to 20 years.
Domenica died seized of an estate comprising personal property and the equity in the family home in Cliffside Park which she owned in fee simple. The equity in the house was approximately $25,500 and the personal estate about $6,800. She was survived by her husband and two infant children, Michele, age seven, and Jane, age three. Bernard Natalino, a brother of the deceased intestate, was appointed guardian of the infants and administrator of the estate. This court ordered the real property sold as being in the best interests of the infants, and the proceeds of the sale were deposited into court pending a determination of the following two questions:
(1) Does a husband who murders his wife have a right to share in her personal estate where the wife dies intestate?
(2) Is a husband who murders his wife entitled to his curtesy interest in real property owned by the wife?
*437 Neither of these precise questions has been decided in this State. Plaintiff contends that both questions should be decided in the negative. Defendant contends that in the absence of a statute, this court has no right to declare a forfeiture of defendant's vested rights.
Under our statute of descent and distribution, an intestate's husband is entitled to one-third of the intestate's personal property if a child or children also survive the deceased parent. N.J.S. 3A:4-2. A widower's curtesy right is provided for in N.J.S. 3A:35-2.
The analogous situations which have arisen in this State are the felonious homicide of (1) a testator by a devisee, (2) a tenant by the entirety by his spouse, and (3) an insured by the beneficiary under the policy. In all three situations our courts have held the wrongdoer to be divested of any rights he or she might have had if the natural course of events had been allowed to follow.
In the insurance cases the courts have impressed a constructive trust on the proceeds of the policy by invoking the age-old maxim of the common law that "no man can profit by his own wrongdoing." See Merrity v. Prudential Insurance Co., 110 N.J.L. 414 (E. & A. 1933); Swavely v. Prudential Insurance Co., 157 A. 394, 10 N.J. Misc. 1 (Sup. Ct. 1931); Turner v. Prudential Insur. Co. of America, 60 N.J. Super. 175 (Chan. Div. 1960).
The property cases are intertwined with N.J.S. 2A:152-2, which provides in pertinent part:
"No conviction or judgment for any offense against this state, shall make or work corruption of blood, disinherison of heirs, loss of dower, or forfeiture of estate."
In Sorbello v. Mangino, 108 N.J. Eq. 292 (Ch. 1931), Vice-Chancellor Fielder outlined the three general views which prevail throughout the country on the question of whether a murderer may acquire property from his victim. They follow:
*438 (1) Under the first view legal title passes to the murderer for one or more of the following reasons:
"* * * (a) [T]he devolution of property of an intestate is controlled entirely by the statutes of descent and distribution, and, in cases of tenancy by the entirety, by the nature of the estate as originally created; (b) denial of inheritance to an heir, or to the survivor in case of tenancy by the entirety, because of his crime, is punishment for the crime in addition to his sentence, and (c) would violate the constitutional provision against corruption of blood. * * *"
108 N.J. Eq., at p. 296.
(2) The second view takes the position that legal title will not pass because of the equitable rule that no man will be allowed to profit from his own wrongdoing, fraud or iniquity. Id.
(3) The third theory allows the legal title to pass but equity treats the wrongdoer as a constructive trustee because of his unconscionable conduct, and will compel the wrongdoer to convey the property to the heirs or next of kin of the deceased. Id.
This third view was adopted in Sherman v. Weber, 113 N.J. Eq. 451 (Ch. 1933), where the nature of the property was a tenancy by the entirety, and in Whitney v. Lott, 134 N.J. Eq. 586 (Ch. 1944), a situation involving a devise from deceased wife to husband-murderer. More recently the doctrine of constructive trust was used in Neiman v. Hurff, 11 N.J. 55 (1952), where a husband murdered his wife. The husband and wife held real property as tenants by the entirety and shares of stock as joint tenants.
In the Whitney case the effect of the statute of wills was circumvented by the use of the constructive trust whereby title would pass, subject however to the imposition of the trust ex malificio. Interestingly enough, the court stated that
"* * * This principle averts the reproach of permitting a criminal to profit by his perfidy and the censure of an evasion of the statutes of wills, descent or distribution." (134 N.J. Eq., at p. 590, emphasis added)
*439 In the Neiman case, Chief Justice Vanderbilt, speaking for the court, held that by the application of the equitable doctrine of constructive trust the court does not interfere with vested legal rights. The Chief Justice stated that:
"This doctrine is so consistent with the equitable principles that have obtained here for centuries that we have no hesitancy in applying it, and we find no merit at all in the defendant's argument that the decision below works a corruption of blood or a forfeiture of estate. * * *" (11 N.J., at p. 61)
The question before us in the instant case concerning the wife's personal property is not a novel one in other jurisdictions. Several states allow recovery to a murderer because neither the common law nor the state statute of descent and distribution specifically prohibits such a result. See e.g., In re Duncan's Estates, 40 Wash.2d 850, 246 P.2d 445, 446, 39 A.L.R.2d 413 (Sup. Ct. 1952). As a result of these holdings a great many states have enacted statutes to thwart what the legislatures considered to be an inequitable situation. See Bradley v. Fox, 7 Ill.2d 106, 129 N.E.2d 699 (Sup. Ct. 1955); Wade, "Acquisition of Property by Wilfully Killing Another  A Statutory Solution," 49 Harv. L. Rev. 715 (1936). Even in the absence of a specific statute, it has been held that a murderer cannot inherit from his victim under the statute of descent and distribution. Price v. Hitaffer, 164 Md. 505, 165 A. 470 (Ct. App. 1933); Garwols v. Bankers' Trust Co., 251 Mich. 420, 232 N.W. 239 (Sup. Ct. 1930); In re Spark's Estate, 172 Misc. 642, 15 N.Y.S.2d 926, (Surr. Ct. 1939). The reasoning of these cases is similar to the afore-mentioned New Jersey decisions in the analogous situations. See, generally, Annotation 39 A.L.R.2d 477 (1955).
On the question of curtesy rights there is apparently no decision anywhere, and a dearth of decisions in other jurisdictions concerning dower rights. These decisions reach a diversity of results. See Horn v. Cole, 203 Ark. 361, 156 S.W.2d 787 (Sup. Ct. 1941) (dower rights denied); Hamblin v. *440 Marchant, 103 Kan. 508, 175 Pac. 678, 6 A.L.R. 1403 (Sup. Ct. 1918), affirmed on rehearing 104 Kan. 689, 180 P. 811, 6 A.L.R. 1403 (Sup. Ct. 1919) (dower rights denied by virtue of statute); Owens v. Owens, 100 N.C. 240, 6 S.E. 794 (Sup. Ct. 1888) (dower allowed under the common law, but case prompted passage of statute. See McMichael v. Proctor, 243 N.C. 479, 91 S.E.2d 231, 235 (Sup. Ct. 1956)). See generally, Annotation 139 A.L.R. 486, 506 (1942).
Based upon the reasoning of our courts in analogous situations and upon the cases in those jurisdictions which deny recovery to a murderer who takes the life of a spouse or the person from whom he or she is to inherit under the statutes of descent and distribution, this court holds that legal title to deceased's personal property passes to defendant and that defendant is entitled to his curtesy interest in the real property. However, the court concludes that defendant is a constructive trustee of the afore-mentioned property because of his unconscionable method of acquiring the property. He is therefore ordered to transfer and convey the legal title to the property to the minor plaintiffs.
The imposition of the trust effectively counters the argument that the effect of the statutes of descent and distribution and the curtesy statute are violated. See Whitney v. Lott, supra. The doctrine of constructive trust is a creature of equity and is operative regardless of the afore-mentioned statutes. The court considers the reasoning of the Neiman case to be applicable in the instant situations, so that this decision does not work a corruption of blood or a forfeiture of estate under N.J.S. 2A:152-2. See Neiman v. Hurff, supra. Further, the court does not think that the denial of the inheritance is punishment for the crime in addition to the sentence. See In re Spark's Estate, supra.
Counsel may submit a judgment in accordance with this opinion.