722 A.2d 115 (1998)
317 N.J. Super. 324
Joseph BENNETT, as Administrator Ad Prosequendum of the Estate of Benita G. Bennett Pyatt, Plaintiff-Respondent,
v.
ALLSTATE INSURANCE COMPANY, Victor Hatami, and Larry Jackson Pyatt, Defendants,
and
Allstate Insurance Company, Defendant-Third Party Plaintiff,
v.
Vera L. Bettis, Third Party Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1998.
Decided December 30, 1998.
*116 Charles C. Berkeley, Brick, for third party defendant-appellant.
Wesley M. Kain, Asbury Park, for plaintiff-respondent (Lawrence, Leslie & Kain, attorneys; Mr. Kain, on the brief).
Before Judges STERN[1], LANDAU and WECKER.
The opinion of the court was delivered by LANDAU, J.A.D.
Third party defendant, Vera L. Bettis (Bettis), appeals from a grant of summary judgment awarding the proceeds of an Allstate life insurance policy to the estate of the insured, Benita Bennett Pyatt (decedent), who was murdered by her husband Larry Pyatt (Pyatt), the primary beneficiary, rather than to her as the named contingent beneficiary. We affirm.
On May 15, 1985, Pyatt and decedent entered into a contract for joint or reciprocal life insurance with Allstate Life Insurance Company (Allstate) that provided $50,000 death benefit on each life. Each named the other as primary beneficiary. Bettis, who is Pyatt's mother, was named as the contingent beneficiary for both Pyatt and decedent.
Pyatt and decedent were married on June 15, 1985 in Lakehurst, New Jersey. At the time of their marriage, the couple had one child, Larissa Pyatt, born October 3, 1984. Decedent also had a son, Keshon Jamal, from a previous relationship. Keshon was subsequently adopted by Pyatt and his last name was changed to Pyatt. Two more children, Marissa and Colin, were born after the marriage.
On or about October 1, 1991, decedent left the marital home with the children as a result of abuse by Pyatt. She obtained custody of the children and a restraining order against Pyatt from the Family Part, Ocean County, pursuant to the Prevention of Domestic Violence Act. Following entry of the restraining order, decedent moved with the four minor children to Lakewood.
On July 3, 1992, Pyatt went to decedent's residence in violation of the restraining order and stabbed her to death in the presence of the children. Pyatt was tried and convicted of murder. He was sentenced to life imprisonment and incarcerated.
Decedent's father, plaintiff Joseph Bennett (the administrator) was named administrator ad prosequendum of her estate. The estate's beneficiaries are the four Pyatt children, presently in the custody of decedent's parents in Virginia, pursuant to a Family Part order.
The administrator filed a verified complaint seeking award of the proceeds of decedent's life insurance policy to the estate. Allstate, Victor Hatami[2] and Pyatt were named as defendants.
Several amended complaints were filed. On July 3, 1996, Allstate filed its answer to the first amended verified complaint and named Bettis as the defendant in a third party complaint.
On December 20, 1996, Allstate was given leave to interplead and directed to deposit $47,988.01 with the Clerk of the Superior Court. A month after Bettis answered the third amended complaint, the motion judge granted summary judgment in favor of the estate, disqualifying defendant Pyatt as primary beneficiary pursuant to N.J.S.A. 3B:7-3.[3]
On February 25, 1997, Allstate paid the sum of $47,988.01[4] to the Clerk of the court *117 pursuant to the interpleader order. Bettis then filed her motion for summary judgment seeking dismissal of the administrator's third amended complaint for failure to state a claim upon which relief can be granted, and the award of the life insurance proceeds to herself as contingent beneficiary under the policy.
The administrator cross-moved for summary judgment on behalf of the estate.
On August 26, 1997, the judge entered an order that denied Bettis' motion for summary judgment and granted the cross-motion, rendering a written opinion in support of the order. The order stayed distribution of the life insurance proceeds pending the present appeal.
The judge appears to have reasoned, in part, that as a result of the fact that N.J.S.A. 3B:7-3 deems Pyatt, the murderer, to have predeceased his victim, the decedent's policy would be payable to her estate. We agree with Bettis that this reasoning gives insufficient effect to the express designation of Bettis as the contingent beneficiary in both policies. In New Jersey, the designated beneficiary of a life insurance policy has a vested interest in the proceeds subject to divestment according to the terms of the policy. New York Life Ins. Co. v. Estate of Hunt, 150 N.J.Super. 271, 274-75, 375 A.2d 672 (App.Div.1977). If there were no supervening considerations in this case, such designation might be dispositive.
The motion judge also endeavored, however, to give effect to the decedent's probable intent as well as to the probable intent of the legislature in enacting N.J.S.A. 3B:7-3, and we believe these issues were properly focused and decided.
A statute should not be construed so as to defeat its intended and evident purpose. Crusco v. Oakland Care Ctr., Inc., 305 N.J.Super. 605, 702 A.2d 1363 (App.Div. 1997); Midlantic Nat'l Bank v. Peerless Ins. Co., 253 N.J.Super. 137, 601 A.2d 243 (App. Div.1992). N.J.S.A. 3B:7-3 is obviously designed to insure that an intentional killer will not be permitted to benefit, directly or indirectly, from his wrongful act. The common law has long followed the same principle. Absent the statute's presumption that he predeceased the decedent, had Pyatt, the murderer, received the insurance proceeds from his wife's policy, he would have been deemed to hold them in constructive trust for the benefit of the children; in this case, decedent's estate. See, e.g., DeSena v. Prudential Ins. Co., 117 N.J.Super. 235, 242, 284 A.2d 363 (App.Div.1971); Kalfus' Estate v. Kalfus, 81 N.J.Super. 435, 440, 195 A.2d 903 (Ch.Div.1963); Jackson v. Prudential Ins. Co., 106 N.J.Super. 61, 75, 254 A.2d 141 (Law Div.1969); Restatement, Restitution, § 189 (beneficiary who murders insured holds his interest under constructive trust for insured's estate).
N.J.S.A. 3B:7-3 should not be construed so as to defeat the very purpose for which it was created. The legislature surely intended to allow a victim's estate, which consists of the children to whom both insureds owed a duty of support, to receive the benefits which would have been forthcoming at common law, rather than a result which turns the funds over to the killer's mother who, by gift, devise or intestacy would have the power to place all or part of those funds back in his hands.
We note, as did the motion judge, that the last mentioned possibility was a compelling consideration for at least one of the judges deciding Beck v. Downey, 198 F.2d 626 (9th Cir.), cert. denied, 344 U.S. 875, 73 S.Ct. 170, 97 L.Ed. 678 (1952), who said that "[i]f judicial policy dictates that [the murderer] cannot take directly, no technical consistency should permit him to benefit indirectly by a gift to his family, especially a mother, from whom he would normally acquire property by the statutes of descent and distribution." Id. at 628 (Fee, J., concurring).
Viewing the facts from the standpoint of the decedent's designation of Pyatt's mother as contingent beneficiary in the insurance contract, other supervening equitable considerations arise.
Although ordinarily the interest of a designated beneficiary of a life insurance policy can only be divested by formal change in the manner prescribed by the policy, those *118 insurance proceeds may nonetheless be subject to the fundamental obligation to provide support for one's unemancipated children. Under equitable circumstances, such obligation may survive the insured's death. In this case, both decedent's intent and her obligation are relevant. Decedent's duty to support her children equitably trumps any interest of the killer's mother. In DeCeglia v. Estate of Colletti, 265 N.J.Super. 128, 625 A.2d 590 (App.Div.1993), we recognized the overriding equitable interest of the support-worthy children of a marriage, even in the face of a facially conflicting statutory provision, to proceeds of policies designating other beneficiaries. DeCeglia, supra, at 139-140, 625 A.2d 590. See also Travelers Ins. Co. v. Johnson, 579 F.Supp. 1457, 1460-63 (D.N.J. 1984); Aetna Life Ins. Co. v. Bunt, 110 Wash.2d 368, 754 P.2d 993, 998 (Wash.1988).
In the present case, the duty of parental support is also consistent with decedent's probable intent. The law of Wills, once stolidly inflexible, has yielded in the hands of modern legislatures and courts to recognition of the moral obligations created by the birth and existence of children, and their effect upon probable intent of the testator. See the discussion in Vasconi v. Guardian Life Ins. Co., 124 N.J. 338, 590 A.2d 1161 (1991) at 343. Vasconi makes clear that the same treatment should be afforded by the courts to life insurance dispositions which are functionally similar to testamentary dispositions.
We recognize that in some cases a factual inquiry into the decedent's probable intent will be necessary. See, e.g., State Farm Life Ins. Co. v. Pearce, 234 Cal.App.3d 1685, 286 Cal.Rptr. 267 (1991)(trial respecting decedent's intent required in dispute between contingent beneficiary who was murderer's sister, and estate of murdered husband, where there were no children of the marriage.) Here, however, where the Pyatt children were minors or unborn at the time of the designation of a contingent beneficiary, we will impute, as a matter of law, decedent's intent to benefit her children consistent with the legal obligation for support by both parents recognized in DeCeglia, supra.
The order granting summary judgment for the administrator and denying Bettis' motion for judgment is affirmed.
NOTES
[1] Judge Stern did not participate in oral argument. However, the parties have consented to his participation in the decision. Judge Stern has reviewed the briefs and record, and participated in deliberations.
[2] Hatami, the Allstate insurance agent, was later dismissed from the case by stipulation.
[3] N.J.S.A. 3B:7-3 provides:

A named beneficiary of a bond, life insurance policy, or other contractual arrangement who criminally and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent.
[4] The amount, which is less than the $50,000 face amount of the policy, reflects a non-disputed deduction for Allstate's attorneys fees and costs associated with the interpleader.