836 A.2d 828 (2001)
364 N.J. Super. 399
Louis WASSERMAN, Executor of the Estate of Roberta J. Schwartz, Plaintiff,
v.
Stephen SCHWARTZ and Jodi Chance, Defendants.
Superior Court of New Jersey, Law Division.
Decided September 14, 2001.
*829 John H. Adler, Adam Kanter and Eric S. Spevak, Haddonfield, for plaintiff.
Stephen M. Holden, Cherry Hill, for defendant.
COOK, J.S.C.
This case presents what appears as an issue of first impression in this State: should equitable distribution of marital estate assets to a deceased wife's estate be permitted, including equitable distribution of her husband's pension or retirement accounts, when their marriage was terminated by the husband slaying his wife, instead of by divorce? For the reasons recited below the answer should be yes.

BACKGROUND
Dr. Stephen Schwartz pled guilty to and was convicted of aggravated manslaughter for slaying his wife, Roberta, in their Cherry Hill residence on March 24, 1996, by repeatedly striking her about the head and chest with a claw hammer and fire *830 extinguisher. He was sentenced to 20 years imprisonment.
Mrs. Schwartz' estate brought "Slayer's Act" claims against Stephen Schwartz, pursuant to N.J.S.A. 3B:7-1 et seq. That legislation embodies the common law principle that is designed to insure that an intentional killer will not be permitted to profit or benefit, directly or indirectly, from his own wrongful act. Bennett v. Allstate Insurance Co., 317 N.J.Super. 324, 329, 722 A.2d 115 (App.Div.1998); Jackson v. Prudential Ins. Co. of America, 106 N.J.Super. 61, 68, 254 A.2d 141 (Law Div.1969) (under common law no one shall be allowed to profit from his own wrong). Following a hearing, an award was entered on plaintiff's Slayer's Act claims for the value of those assets held in Mrs. Schwartz' name, the value of her IRA account, and the value of her interest in assets jointly acquired or accumulated during the Schwartz' 10-year marriage.
Mrs. Schwartz' estate has also brought wrongful death and survival action claims against Stephen Schwartz for compensatory and punitive damages. On January 19, 2001, partial summary judgment was entered, finding him liable as a matter of law for compensatory and punitive damages, for the injuries to and wrongful death he inflicted upon his wife.
Plaintiff, as executor of Roberta Schwartz' estate, also asserts that in conjunction with the Slayer's Act claims, and the damages awardable for the wrongful death action and survival action claims, her estate should be entitled to an equitable distribution of the marital assets that accumulated during the Schwartz' 10-year marriage, including Stephen Schwartz' retirement and pension plan assets, because had he not terminated their marriage by slaying her, and the marriage instead terminated by divorce, Mrs. Schwartz would have been entitled to an equitable distribution of their marital estate assets.
DISPOSITION AND DISTRIBUTION OF THE ASSETS INCLUDIBLE IN THE SCHWARTZ' MARITAL ESTATE
A bench trial was conducted on June 29 and July 11, 2001, to identify and ascertain the value of all assets held by or for Stephen Schwartz' benefit, including pension or retirement plan accounts; and to determine what portion should belong to the Schwartz' marital estate, and what portion belongs solely to Stephen Schwartz. Plaintiff presented the expert testimony and report of Sharon J. Bishop, a certified public accountant, whose financial expertise includes asset valuations and forensic accounting. Her qualifications were unchallenged by defendant, and her report was received in evidence, without objection. She identified certain assets held by or for Stephen Schwartz' benefit, their dates of acquisition; asset valuations as of the date of the marriage of Stephen Schwartz and Roberta Schwartz (August 18, 1985); asset valuations as of the date Stephen Schwartz killed his wife (March 24, 1996); and the current values of the assets.
In her report and testimony, Ms. Bishop further documented all the assets includible in the marital estate and their values, and concluded that the total value of all those assets includible in the marital estate is $929,796. That amount included marital estate assets Stephen Schwartz has spent since the day he killed his wife, such as the $130,000 cash in a safe deposit box; $188,570 from a PNC Bank account; $100,000 from AARP investment accounts; along with monies from Stephen Schwartz' retirement accounts. Those marital estate assets also included $541,099 presently held in Stephen Schwartz' name in his American Dental Association retirement plan, his IRA, and a Manulife annuity account. *831 Not included in the marital estate are certain assets, such as Philadelphia real estate that Stephen Schwartz owned and sold for $100,000 in June, 1996; as well as three limited partnerships he owns, including an ownership interest in a nursing facility. He has received over $27,000 annually from his interest in the latter facility, the "Washington Nursing Facility". He also received $4,219 in 2000 from his limited partnership interest in "Columbus Associates".
Each of the assets identified in the Bishop report as part of the marital estate are properly includible in the marital estate.[1] Further, the $929,796 valuation of the marital estate assets by Ms. Bishop in her report and testimony is a correct valuation.
While defendant Schwartz submits no pertinent authority to the contrary, he baldly asserts that all assets he holds in his name or that are held for him by another belong to him and him alone, and that the Estate of Roberta Schwartz has no entitlement to any of those assets. He claims, e.g., that Roberta Schwartz' estate is not entitled to any share or distribution of his ADA retirement plan or his pension plan. However, for the reasons that follow, her estate is entitled to a distributive share of the marital estate, and the marital estate properly includes the assets in Stephen Schwartz' retirement and pension plans.
No matter how Stephen Schwartz may label assets held in his name or for his benefit, it is clear that if any such assets or portions thereof represent a benefit to him or profit by him, directly or indirectly, as a result of killing his wife, he must return them to plaintiff's estate. The portion of the marital estate that belonged to Roberta Schwartz at the time she was slain by her husband and which is now held in his name or for his benefit, is a part of his ill-gotten gains from killing her. Her estate thus has an interest in the assets which constituted and grew out of the marital property acquired by Stephen and Roberta Schwartz during the course of their ten year marriage, and which are presently held by Stephen Schwartz individually. This includes the interest of Roberta Schwartz under the law in the property and assets acquired during the course of her ten year marriage to Stephen Schwartz, even though those assets may have been and are titled in Stephen Schwartz's name alone. See, Carr v. Carr, 120 N.J. 336, 349-50, 576 A.2d 872 (1990), where the New Jersey Supreme Court held:
a spouse may acquire an interest in marital property by virtue of the mutuality of efforts during marriage that contribute to the creation, acquisition, and preservation of such property. This principle, primarily equitable in nature, is derived from notions of fairness, common decency, and good faith.
In Carr, the husband died during the pendency of divorce proceedings which were initiated by his wife, and he left his entire estate to his children from a prior marriage. At issue was whether or not the wife was entitled to either a statutory equitable distribution of the marital assets, or only the statutory elective share. The Supreme Court held that by its terms, the equitable distribution statute, N.J.S.A. 2A:34-23, did not permit distribution of the marital assets to the wife because her divorce was never finalized. Carr, 120 N.J. at 345-46, 576 A.2d 872. Moreover, the court held that the elective share provisions *832 of the Probate Code, N.J.S.A. 3B:8-1 et seq., did not allow the wife to obtain the elective share because she was not living with her husband at the time of his death. Id. Nevertheless, the Court relied on equitable grounds to permit the wife to obtain the benefit of those assets which constituted the marital estate. Since neither statute, by their terms, offered Mrs. Carr relief, the parties characterized her plight as akin to being trapped in a black hole. The Estate of Roberta Schwartz is in a similar situation with regard to the majority of the marital assets because of the manner in which those assets have been held by Stephen Schwartz. For example, $541,099 in assets are presently held in Schwartz' name in his ADA retirement, IRA and Manulife annuity accounts. Had the Schwartz' marriage ended by divorce, a court would have recognized her interest in those assets, and they would have been subject to equitable distribution. See N.J.S.A. 2A:34-23; Scavone v. Scavone, 243 N.J.Super. 134, 137, 578 A.2d 1230 (App.Div.1990)(Keogh plan assets are subject to equitable distribution); Stamberg v. Stamberg, 302 N.J.Super. 35, 38, 694 A.2d 592 (App.Div.1997)(IRA assets are subject to equitable distribution). Because the Schwartz' marriage ended in the death of Roberta Schwartz by homicide, rather than by divorce, the plaintiff cannot directly rely on the equitable distribution provision. Moreover, despite the fact that a judgment of liability for wrongful death has been entered against Stephen Schwartz, Roberta Schwartz' estate may be unable to reach the Keogh or the IRA assets, because those assets are protected from execution. N.J.S.A. 25:2-1(b). Thus, if the Court does not exercise its equitable powers in this matter to recognize Roberta Schwartz' interest in those retirement assets, the Estate of Roberta Schwartz may find itself, like Mrs. Carr, in a black hole.[2]
In Carr, the Supreme Court recognized that the public policy underlying both the equitable distribution and the elective share statutes was that "each spouse contributes to and creates marital assets and thereby has an entitlement in such property that is protectable when the marriage ends." Id. at 349, 576 A.2d 872. The Supreme Court further noted that "courts should be responsive to legislation as expressive of public policy" and that in the exercise of common law jurisdiction, courts should rely on the public policies that form the basis of legislation even though the legislation itself might not be applicable in a particular matter. Id. at 350, 576 A.2d 872. Accordingly, although statutory relief was unavailable to the wife in Carr, the court held that it could exercise its inherent equitable jurisdiction and craft an equitable remedy for the wife that would protect her interest in the marital estate. Id. at 350-51, 576 A.2d 872. Specifically, the Court found that a constructive trust should be imposed upon the marital property to the extent the wife could prove an interest in that property. See also, Jacobson v. Jacobson, 146 N.J.Super. 491, 370 A.2d 65 (Ch.Div.1976)(husband who murders wife during pendency of divorce action may not object to equitable distribution).
*833 In a strikingly similar case, the Wisconsin Court of Appeals recognized the right of a wife's estate to a one-half interest in her husband's pension after the husband killed her. In re Estate of Diane L. Hackl, 231 Wis.2d 43, 604 N.W.2d 579(Wis.Ct.App.1999). The court held that the husband's pension constituted marital property, despite the fact that the Wisconsin statutes expressly provided that the marital property interest of a non-employee spouse in an employee-spouse's pension terminated at her death. The husband asserted that because the statute made no exceptions, his slain wife's estate could not obtain an interest in the pension. The court rejected the husband-slayer's argument, finding that the statute's failure to address the particular situation presented in that case (i.e., an employee/spouse intentionally killing his non-employee spouse) allowed the court to rely on equitable principles to resolve the dispute. Hackl, 231 Wis.2d at 47, 604 N.W.2d 579. The Hackl Court found that equity prohibited the slayer-spouse from benefiting from his crime. The court noted that "where two persons have an interest in property and the interest of one of them is enlarged by the murder of the other, to the extent to which it is enlarged, he holds it upon a constructive trust for the estate of the other." Hackl, 231 Wis.2d at 55, 604 N.W.2d 579, citing Restatement of Restitution § 188. The court also noted that the legislature's enactment of provisions which prevent a killer from obtaining a survivorship interest in a joint tenancy, or from receiving the benefits of the decedent's estate as a beneficiary, or from receiving the proceeds of the decedent's life insurance policy, indicated the legislature's willingness to foster the public policy that a slayer should not profit from his crime. The provisions cited by the Hackl court are Uniform Probate Code provisions that have also been adopted and are presently codified in the New Jersey "Slayer's Act", N.J.S.A. 3B:7-1 et seq.
The rationale of Hackl is most persuasive. In this case, defendant Stephen Schwartz profited, benefited and has been unjustly enriched as a result of intentionally killing his wife. Pursuant to the holding and the equitable principles expressed in Carr, and the rationale expressed in Hackl, this Court recognizes Roberta Schwartz's interest in the marital assets which were acquired or accumulated during her ten year marriage to the defendant. Public policy dictates that a spouse should enjoy the benefit of the assets accumulated during the marriage. Moreover, public policy dictates that a killer like Stephen Schwartz should not benefit from his crime.
By intentionally killing Roberta Schwartz, Stephen Schwartz seized his wife's interest in their marital assets. In order to recognize Roberta Schwartz' interest in the marital estate and prevent Stephen Schwartz from benefitting from his intentional and wrongful act, this Court finds that the assets accumulated by Stephen and Roberta Schwartz constituted martial assets in which Roberta Schwartz had an interest, even if those assets were listed in the name of Stephen Schwartz alone.
Indeed, the provisions of N.J.S.A. 3B:7-5, as well as common law doctrine, dictate that this Court recognize that Stephen Schwartz has wrongfully acquired and retained the interest and the benefit that belonged to Roberta Schwartz in their marital estate, and that her interest in their marital estate must be returned by him to her estate. N.J.S.A. 3B:7-5 is a reiteration of the common law principle that no one shall be allowed to profit or benefit, directly or indirectly, from his own wrongdoing, including enjoying a benefit that he would not have enjoyed except for *834 his wicked intentional killing of his spouse. Jackson v. Prudential Ins. Co. of America, 106 N.J.Super. 61, 68, 254 A.2d 141 (Law Div.1969) (the common law precept that no one shall be allowed to profit from his own wrong would be violated, and it would be contrary to public policy to permit one who kills another to retain property acquired by his crime); Metropolitan Life Ins. Co. v. McDavid, 39 F.Supp. 228 (E.D.Mich.1941).
This result is buttressed by the Supreme Court's opinion in Neiman v. Hurff, 11 N.J. 55, 93 A.2d 345 (1952). There, the Court noted that the common law doctrine that no one should be allowed to profit by his own wrongdoing is "so essential to the observance of morality and justice, [that it] has been universally recognized in the laws of civilized communities for centuries and is as old as equity. Its sentiment is ageless." Id. at 60-61, 93 A.2d 345 (quoting Whitney v. Lott, 134 N.J.Eq. 586, 589, 36 A.2d 888 (Ch.1933) (citations omitted)). In his review of the common law treatment of killers who profited from their crimes, Chief Justice Vanderbilt said:
To permit the murderer to retain title to the property acquired by his crime as permitted in some states is abhorrent to even the most rudimentary sense of justice. Id. at 60 [36 A.2d 888].
Indeed, it would be a grave injustice to allow Stephen Schwartz to keep his wife's share of their marital property that he obtained by killing her. Public policy cries out against such a result.
Accordingly, the interest or share of Roberta Schwartz in the marital property at the time of her death, together with any interest or gains thereon, must be distributed to her estate by defendant Schwartz.
Further comment regarding the Keough and IRA retirement plans of Stephen Schwartz is in order. As noted in the Bishop report, Stephen Schwartz has a number of retirement plans, including an American Dental Association (ADA) Members' Retirement Keough plan; an Equitable 300 + IRA plan, and a Manulife annuity account. Those assets are subject to equitable distribution. See, Scavone v. Scavone, supra, (Keough plan assets are subject to equitable distribution); Stamberg v. Stamberg, supra, (IRA assets are subject to equitable distribution). Stephen Schwartz resists distribution of assets from his ADA retirement plan to the Estate of Roberta Schwartz alleging that Roberta Schwartz had no marital or other interest in that plan because she signed a document on July 21, 1992 "waiving [her] right to receive survivor benefits under the plan which otherwise would be paid to [Roberta Schwartz] automatically upon the above named Participant's [Stephen Schwartz] death", and consenting to "future beneficiary designation changes by [Stephen Schwartz]..." Exhibit D-4. But any waiver of survivor benefits by Roberta Schwartz did not waive nor operate to defeat her entitlement to an equitable distribution from that plan had she not been slain, nor should it now defeat the entitlement of her estate to an equitable share. Indeed, any waiver of "survivor benefits" is irrelevant. Stephen Schwartz isn't dead, and thus "survivor benefits" are neither the subject of nor are being distributed in this case.
Defendant makes the same fallacious argument respecting the equitable distribution of his Equitable 300 + IRA account. The fact that on July 29, 1992 Stephen Schwartz designated his daughter, Jodi Chance, as the primary beneficiary "to receive my IRA assets upon my death", and that Roberta Schwartz may have signed the designation of beneficiary form, Exh. D-4, is irrelevant. Stephen Schwartz isn't dead, and so survivor's benefits are not the subject of this case.
*835 Further, survivor benefits beneficiary designations do not affect equitable distribution. See, e.g., Layne v. Layne, 442 Pa.Super. 398, 659 A.2d 1048 (1995) (husband's designation of former wife as beneficiary of his Keough pension plan did not affect equitable distribution of the pension plan assets). See also, Hirko v. Hirko, 166 N.J.Super. 111, 398 A.2d 1353 (Ch.1979) (cash surrender value of ex-spouse's life insurance policy may be reached by former spouse for payment of alimony obligations, notwithstanding insured's designation of his mother as beneficiary). In this case, had Stephen Schwartz not intentionally killed Roberta Schwartz, and their marriage instead ended in divorce, she would have been entitled to equitable distribution of Stephen Schwartz' retirement and pension plan assets, regardless of beneficiary designation.
Having determined that Roberta Schwartz' estate is entitled to the same distribution available under the principles governing the equitable distribution of a marital estate, and having determined that all the assets listed in the Bishop report as includible in the marital estate are subject to distribution in this case, and having determined that the total value of those marital estate assets for purposes of distribution is $929,796, the Court must decide how the allocation can be most equitably made. Rothman v. Rothman, 65 N.J. 219, 232, 320 A.2d 496 (1974). The process of equitably distributing property acquired during the marriage is not simply a matter of a mechanical division of marital assets. Stout v. Stout, 155 N.J.Super. 196, 205, 382 A.2d 659 (App.Div.1977). Rejecting the concept of an automatic 50/50 division, the Supreme Court has directed that each case be examined as an individual and particular entity. Rothman, 65 N.J. at 233, 320 A.2d 496.
Equitable distribution requires the Court to apportion the marital assets in a manner that will be just to the parties under all the circumstances of the particular case. Painter v. Painter, 65 N.J. 196, 209, 320 A.2d 484 (1974). In determining what constitutes a "just" apportionment of marital assets, a court must bear in mind that:
The whole point of equitable distribution is premised on the recognition of a marriage as a shared undertaking in which both spouses, by virtue of their pecuniary and non-pecuniary contributions, participate in the process by which assets, irrespective of their title thereto, are accumulated during the marriage and are consequently entitled to a fair share of those assets upon dissolution of the marriage. Daeschler v. Daeschler, 214 N.J.Super. 545, 552 [520 A.2d 777] (App.Div.1986)(emphasis added).
In order to recognize Roberta Schwartz's interest in the marital estate, and prevent Stephen Schwartz from benefiting from his intentional and wrongful act, the assets accumulated by Stephen and Roberta Schwartz constitute marital assets in which Roberta Schwartz has an interest, even if those assets are or were listed in the name of Stephen Schwartz alone.
In performing an equitable distribution analysis, the burden of showing that an asset is exempt from distribution is on the party asserting it. Painter v. Painter, 65 N.J. 196, 214, 320 A.2d 484; Valentino v. Valentino, 309 N.J.Super. 334, 707 A.2d 168 (App.Div.1998). Thus, to the extent that the party fails to prove that a portion of the marital estate represents their separate property, it shall be classified as a marital asset and subject to division. Landwehr v. Landwehr, 111 N.J. 491, 504, 545 A.2d 738 (1988). Here, Stephen Schwartz has failed to establish that *836 any of the assets specified in the Bishop report as includible in the marital estate, or the monies held by his criminal defense attorney and his bank, are immune from distribution of assets in the equitable distribution context. Further, any assets having marital estate exempt components were factored into the Bishop report analysis. In valuing the actual estate itself, any property acquired by one spouse prior to the date of marriage remains separate property of that spouse, and in the event of divorce does not qualify as an asset eligible for distribution. Painter, supra at 214, 320 A.2d 484. The Court in Painter also held that any incremental value to such property also enjoys a like immunity. Id. The Court finds that those incremental values were factored into the Bishop report, and that no appreciation in value of pre-marital assets was included in the marital estate value. The Supreme Court also noted in Painter that "the immunity of incremental value to which we refer is not necessarily intended to include elements of value contributed by the other spouse, nor those for which husband and wife are jointly responsible." Id. at 214, n. 4, 320 A.2d 484.
In Scherzer v. Scherzer, 136 N.J.Super. 397, 346 A.2d 434 (App.Div.1975), certif. denied, 69 N.J. 391, 354 A.2d 319 (1976), the Court addressed the incremental value question in the context of pre-marital stocks, holding that, "any increase in value occurring after the marriage should be considered eligible [for equitable distribution] to the extent that it may be attributable to the expenditures of the effort of plaintiff-wife." Id. at 401, 346 A.2d 434. The theory is that a homemaker's contribution cannot be given a monetary worth and its value may be gleaned from the earnings of the employed spouse. Id. Also, N.J.S.A. 2A:34-23.1 creates a rebuttable presumption that, "each party made a substantial financial or nonfinancial contribution to the acquisition of income and property while the party was married." And although the burden is on Stephen Schwartz to show that any increase in value is exempt from the marital estate, he has not met that burden.
In summary, to the extent a non-owner spouse's efforts contribute towards an increase in the value of an asset, even an asset of the owner-spouse which is pre-marital, the non-owner spouse is entitled to have the incremental value included in the marital estate for purposes of distribution.
In determining what is an equitable distribution of marital estate assets, the factors to be considered by a court are enumerated in N.J.S.A. 2A:34-23.1. Those factors and the findings relating to those factors follow:
1. The duration of the marriage: The marriage of Roberta Schwartz and Stephen Schwartz lasted 10½ years.
2. The age and physical and emotional health of the parties: Stephen Schwartz is 64 years of age. He has claimed physical ailments but has presented no proof. Roberta Schwartz would now be 59 years of age, had Stephen Schwartz not slain her.
3. The income or property brought to the marriage by each party: As set forth in the Bishop report, the pre-marital estate of Stephen Schwartz consists of $98,201.00, as well as real estate and limited partnerships. All pre-marital assets and the appreciation thereon have been taken into account in the Bishop report in the calculation of the value of the marital estate.
4. The standard of living established during the marriage: The parties enjoyed a significant standard of living which Roberta Schwartz would have been entitled to maintain given her age at the time of *837 her death. The defendant was a prosperous dentist.
5. Any written agreement made by the parties before or during the marriage concerning an arrangement of property distribution: There are no written agreements in the record. One account was divided prior to separation. That account has not been included in the marital estate for distribution purposes.
6. The economic circumstances of each party at the time the division of property becomes effective: Stephen Schwartz is incarcerated for the slaying of his wife, and has minimal cost of living expenses. He has annual income, including $27,000 last year from his limited partnership interest in Washington Nursing Facility. Roberta Schwartz would have been in need of significant assets to maintain the marital standard of living had she not been killed by Stephen Schwartz.
7. The income and earning capacity of each party, including education background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting, at a standard of living reasonably comparable to that enjoyed during the marriage: During the marriage, the parties primarily lived off the income produced by Stephen Schwartz from his dental practice. Neither party had custodial responsibilities, as their children, from prior relationships, were emancipated.
8. The contribution by each party to the education, training or earning power of the other: Roberta Schwartz contributed to Stephen Schwartz' earning capacity by taking care of the home to enable him to devote his efforts to his business.
9. The contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a party as a homemaker: The assets in question were primarily acquired during the course of the marriage. The vast majority of the value of the assets was either earned or appreciated during the course of the marriage. The specific values for each asset are set forth in the Bishop report, and as determined above, the total value of the assets includible in the marital estate is $929,796. Furthermore, since slaying his wife, the marital assets have been substantially spent or dissipated by Stephen Schwartz, to the extent of $450,000 or more. The value of the marital estate includes the assets he has spent down or otherwise dissipated. In the matrimonial context, dissipated funds are subject to equitable distribution, as if the funds were not dissipated at all. Kothari v. Kothari, 255 N.J.Super. 500, 507, 605 A.2d 750 (App.Div.1992). "Dissipation may be found where a spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage relationship was in serious jeopardy." Id.
10. The tax consequences of the proposed distribution as to each party: The evidence presented at the hearing established that due to the alienation of the vast majority of the non-retirement assets by Stephen Schwartz, following his slaying Roberta Schwartz, including gifts to his daughter or payments to his Philadelphia lawyer, taxes will be incurred to distribute the property, and particularly the retirement assets, if Qualified Domestic Relations Orders (QDROS) are not available. The uncontroverted testimony of Ms. Bishop, the financial expert, was that as a consequence, the taxes which would be incurred are approximately $216,440.
*838 Since these taxes would not have been incurred at this time but for the killing of Roberta Schwartz, because a QDRO would have been available in a divorce proceeding to defer taxes on Roberta Schwartz' share of Stephen Schwartz' retirement or pension plans, it is fair and equitable to direct that all taxes be paid by Stephen Schwartz, the slayer of Roberta Schwartz, from his share of the marital estate, or from his exempt assets, due to his substantial dissipation of the non-retirement and thus non-taxable marital estate assets. The responsibility of Stephen Schwartz to fund these taxes is further addressed below.
11. The present value of the property: The present value of the marital estate is $929,796.00.
12. The need of a parent who has physical custody of a child to own or occupy the marital residence and to use or own the household effects: This factor is not applicable.
13. The debts and liabilities of the parties: This factor is not applicable.
14. The need for creation, now or in the future, of a trust fund to secure reasonably foreseeable medical or educational costs for a spouse or children: Since Roberta Schwartz was slain by Stephen Schwartz, there will be no future medical bills or expenses.
15. The extent to which a party deferred achieving their career goals: It is uncontroverted that Roberta Schwartz did not pursue a full time career after her marriage to Stephen Schwartz.
16. Any other factors which the Court may deem relevant: Given the heinous nature of the crime committed by Stephen Schwartz, his violent killing of Roberta Schwartz should be considered as a relevant factor in equitable distribution. It should also be noted that if this had been a divorce proceeding, instead of a Slayer's Act proceeding, and had Roberta Schwartz survived the brutal beating by Stephen Schwartz, she would have been entitled to damages pursuant to Tevis v. Tevis, 79 N.J. 422, 400 A.2d 1189 (1979), which provides for personal injury damages to be tried in the divorce proceeding, and for payment of damages to come from the defendant's share of equitable distribution.
In view of the above factors, the subject assets to be distributed were acquired during the course of a lengthy marriage. The parties equally participated in their acquisition through their various efforts and actions. The Court should so assume, since no contrary evidence was presented. As the relevant portion of the statute provides:
It shall be a rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of income and property while the party was married. N.J.S.A. 2A:34-23.1.
As discussed above, Stephen Schwartz, should bear full responsibility for any taxes incurred as a result of his withdrawals from his IRA and Keough accounts for payment of Roberta Schwartz' share of the marital estate to her estate. After all, it is the strong public policy of New Jersey that a person should not be permitted to profit as a result of his wrongdoing. Neiman v. Hurff, supra, 11 N.J. at 60-61, 93 A.2d 345. This doctrine, "so essential to the observance of morality and justice has been universally recognized in the laws of civilized communities for centuries and is old as equity. Its sentiment is ageless". Id. (quoting Whitney v. Lott, 134 N.J.Eq. 586, 589, 36 A.2d 888 (Ch.1944)). In this case, Stephen Schwartz must be held liable for the taxes due upon distribution of the assets presently held in his name, because by his actions, he thwarted Roberta *839 Schwartz from obtaining a tax-free distribution of those assets, through his dissipation of large amounts of cash and other non-retirement assets since he killed Roberta Schwartz. As a result, most of the assets presently held in Stephen Schwartz's name are in retirement accounts. If Roberta Schwartz had divorced her husband, instead of being killed by him, the assets presently held in those retirement accounts could have been distributed to her on a tax-deferred basis, pursuant to a qualified domestic relations order ("QDRO"). 26 U.S.C.A. § 401(a)(13)(B). If the assets had been distributed pursuant to a QDRO, she could have transferred those assets into her own retirement account and deferred any tax liability until after she retired or until she reached the age at which she was required by law to make withdrawals. However, since Roberta Schwartz' marriage ended as a result of her death at the hands of her husband, instead of by way of a divorce, her estate is unable to obtain a distribution of the retirement assets presently held in the name of Stephen Schwartz pursuant to a QDRO, because ERISA defines a qualified domestic relations order as, among other things, a judgment or order which "is made pursuant to a State domestic relations law." 29 U.S.C.A. § 1056(d)(3)(B)(ii)(II). Because Stephen Schwartz has spent the bulk of the non-retirement assets in the marital estate after killing Roberta Schwartz, the distributions in this case will largely come from his retirement accounts. And, since such distributions are not being made pursuant to New Jersey's domestic relations statute as a result of a divorce, upon distribution of the retirement assets, a tax liability will be incurred. In order to prevent Stephen Schwartz from obtaining a benefit as a result of killing his wife, by shifting a portion of his tax liability to her estate, any tax liability arising from the distribution of retirement assets to the Estate of Roberta Schwartz should be the responsibility of Stephen Schwartz.
Considering all of the above factors, it is fair and reasonable to order a distribution to the Estate of Roberta Schwartz of an amount equal to one-half of the marital estate, plus the amount of the taxes that will be incurred on that portion of the distribution that will come from the pension or retirement accounts of Stephen Schwartz. One-half of the marital estate is $464,898, and as set forth in the Bishop report and in Ms. Bishop's testimony, it is uncontroverted that the tax on the distributable amounts coming from the defendant's retirement accounts will be $216,440. Therefore, the Estate of Roberta Schwartz is hereby awarded a total of $681,338, and the Court hereby imposes a constructive trust upon all assets held by or for the benefit of Stephen Schwartz in the amount of $681,338, for purposes of payment of this award to the Estate of Roberta Schwartz. Further, the restraints imposed by the Order of May 10, 2001 upon any expenditures, use or dissipation of any assets held by or for the benefit of Stephen Schwartz is continued, pending further Order, except for the purpose of payment of the $681,338 award to the Estate of Roberta Schwartz. Pending further Order, such restraints are also extended to any income or other assets that Stephen Schwartz may have received or acquired beyond those listed in the Bishop report, or that he may receive or acquire in the future. Further, Stephen Schwartz shall execute all documents necessary to effectuate payment of the $681,338 award to the Estate of Roberta Schwartz.
SO ORDERED this 14th day of September, 2001.
NOTES
[1] Those marital estate assets consisting of assets in Stephen Schartz' IRA and retirement and annuity accounts are discussed infra.
[2] Legislation recently enacted and effective July 13, 2001 provides that no trust qualified and maintained pursuant to the Internal Revenue Code, including 26 U.S.C. § 401, 403, 408 408A, 409, 529 or 530, shall be exempt from any punitive damages awarded in a civil action arising from manslaughter or murder. N.J.S.A. 25:2-1(b)(3). As noted, the compensatory and punitive damages trial in the related wrongful death and survival action arising from Stephen Schwarz' admitted aggravated manslaughter of Roberta Schwartz is pending.