J-E02002-18

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
STEVEN PREDMORE : No. 238 EDA 2017

Appeal from the Order Entered December 12, 2016
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000062-2016

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., SHOGAN, J.,
LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., and
McLAUGHLIN, J.

DISSENTING OPINION BY McLAUGHLIN, J.:     **FILED NOVEMBER 27, 2018**

I respectfully dissent. Although the evidence in this case is conflicting, I believe a reasonable jury could reconcile the conflicts and conclude that the evidence establishes that Steven Predmore committed the crime of attempted murder. I therefore disagree with my learned colleagues in the Majority, and would reverse the trial court's order dismissing the charge of attempted murder.

Respectfully, I believe the Majority misapprehends the Commonwealth's argument. The majority characterizes the Commonwealth's brief as contending that the Commonwealth made out a *prima facie* case of attempted murder "based solely on evidence that Appellee had taken a substantial step toward the commission of a first-degree murder." Majority Opin. at 1. The Majority then explains that mere evidence of a substantial step toward the killing is insufficient; rather, to establish a *prima facie* case of attempted

murder, the Commonwealth must also present evidence establishing that the defendant possessed the specific intent to kill. *Id.* at 5.

As I understand the Commonwealth's argument, it does not omit the *mens rea* element. Rather, the Commonwealth contends that "[t]he finder of fact could reasonably find that . . . the defendant took a substantial step toward the intentional[] killing. . . ." Com. Substituted Br. at 18. Although perhaps inartfully stated, its point is that it presented a *prima facie* case because a reasonable jury could find not only that Predmore took a substantial step toward murdering the victim, but also that he possessed the specific intent to kill.

When I review the evidence, I agree with the Commonwealth that it presented a *prima facie* case. The Commonwealth maintains that the testimony that Predmore aimed the gun at the victim at chest-to-face level, the victim started to run when he saw the firearm, and Predmore's subsequent shooting of the gun, in combination, all establish not only that Predmore took a substantial step toward the killing, but also that Predmore possessed the specific intent to kill. Com. Substituted Br. at 18.

The Majority may be correct that the Commonwealth does not make out a *prima facie* case of specific intent to kill if the evidence is that the defendant shot the victim in the calf while two-to-three feet away from the victim. Here, however, that is not the extent of the evidence. As the Commonwealth points out, the victim testified that before Predmore shot him, Predmore aimed the gun at him at "chest to face level"; the victim also testified that he started to

run when he saw the firearm. N.T., 1/8/16, at 13, 24. In addition, eyewitness Cheyenne Eberhart said that Predmore and the victim struggled for the firearm just before the shooting, and that the two men were five feet apart when Predmore fired the weapon. *Id.* at 32-33.

Although the victim said Predmore was two to three feet away from him when he fired the gun, *id.* at 12-13, I believe we must accept the greater distance as being true, for purposes of our review. Certainly, as the majority notes, in the typical case the shorter distance would favor the Commonwealth's attempts at establishing specific intent to kill. In this case, however, I consider the slightly longer distance of five feet to be the appropriate distance for us to consider, as the greater the distance, the more likely it is that the defendant intended to shoot the victim in a vital bodily part but simply missed.

The evidence of such a scenario — Predmore's aiming of the gun at vital parts of the victim's body, the struggle for the weapon, the victim's running, and a distance between Predmore and the victim – states a *prima facie* case of attempted murder. Predmore's aiming of the gun at the victim and his firing it at the victim demonstrate the specific intent to kill, while the struggle, flight, and distance would have affected Predmore's accuracy. Together, these factors raise an inference that he intended to kill the victim and tried to do so, but simply failed.

The Majority reaches a different conclusion based on three things: "the victim's unprovoked instigation of a confrontation"; the "lack of any verbal

expression of intent to kill"; and "the near impossibility of Appellee's missing any area near a vital portion of the victim's body from the range at which he fired. . . ." *Id.* Respectfully, I believe the Majority's approach is improper because it both holds the Commonwealth to a greater burden than it must carry at this juncture, and involves the weighing of the evidence.

At this stage, the Commonwealth must merely "produce[] evidence of each of the material elements of the crime charged and establish[] sufficient probable cause to warrant the belief that the accused committed the offense." *Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005) (quoting *Commonwealth v. Huggins*, 836 A.2d 832, 866 (Pa. 2003)).[1] It does not bear the burden of proving its case beyond a reasonable doubt. *Commonwealth v. Hilliard*, 172 A.3d 5, 10 (Pa.Super. 2017). The Commonwealth carries its burden where there is "'evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime.'" *Commonwealth v. Starry*, --- A.3d ---, 2018 PA Super 266, at *5 (filed Sept. 24, 2018) (quoting *Commonwealth v. Hendricks*, 927 A.2d 289, 291 (Pa.Super. 2007)).

Importantly, we may not weigh the evidence or consider the various witnesses' credibility. *Hilliard*, 172 A.3d at 10 (citing *Commonwealth v. Landis*, 48 A.3d 432, 444 (Pa.Super. 2012) (*en banc*)). That is not the judicial

---

[1] *See also Hilliard*, 172 A.3d at 10; *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa.Super. 2001).

function at the pretrial *habeas corpus* stage. Rather, weight and credibility are for the factfinder at trial. *Id.*

Our decision in *Landis* illustrates this last point and should guide our analysis here. There, the defendant was charged with assault of a law enforcement officer, among other things, and filed a pretrial motion for *habeas corpus*. To support the charge, the Commonwealth presented police officers' testimony that after the defendant shot his wife, he called 911 and barricaded himself in the basement of their home. *Landis*, 48 A.3d at 446. After a lengthy standoff, the officers attempted to Taser the defendant and ran down the basement stairs to seize him. The defendant retreated into the basement, pointed a handgun at the officers. The officer leading the charge reacted quickly when he saw the gun, and turned and pushed the other officers back toward the top of the stairs. *Id.* at 447. The defendant fired the gun but missed the officers. *Id.*

The trial court granted the writ, but this Court *en banc* reversed. We first explained that because none of the officers had sustained injury, and the parties did not dispute the other elements of the offense, the issue was whether the Commonwealth had established *prima facie* that the defendant had attempted to inflict bodily injury on the officers. *Id.* at 445 (citing 18 Pa.C.S. § 2702.1). Noting that attempt requires specific intent, we concluded that the Commonwealth had satisfied that element, because pointing a gun at a person and then firing it "'speaks volumes as to one's intention.'" *Id.* at 447 (quoting *Commonwealth v. Hall*, 830 A.2d 537, 543 (Pa. 2003)).

Most relevant to our present decision, we then rejected the trial court's determination that the evidence showed that the defendant had only intended to frighten the officers. The trial court had reached that conclusion because the bullet landed at the bottom of the stairs, instead of at the top, closer to the officers. *Id.* at 448. We explained that the trial court's consideration of such alternative explanations resulted from the trial court's failure to view the evidence in the Commonwealth's favor and its improper weighing of the evidence. We "emphasiz[ed] that it is inappropriate for the trial court to make credibility determinations in deciding whether the Commonwealth established a *prima facie* case, and the charge must be bound over for trial if evidence of the existence of each element of the offense is presented." ***Id.***

Our reasons for rejecting the trial court's analysis in ***Landis*** apply fully here, and respectfully, I believe the Majority has failed to abide by the wisdom of ***Landis***. The Majority finds no *prima facie* case first because Predmore did not actually say that he meant to kill the victim. Majority Opin. at 16. Respectfully, I believe that analysis is improper because the Majority applies something closer to a reasonable doubt standard and weighs the Commonwealth's evidence, in conflict with our decision in ***Landis***. Indeed, the Majority points out what it perceives to be a flaw in the Commonwealth's evidence in order to discredit the Commonwealth's evidence. However, it is not for us to decide if the absence of certain evidence overcomes the evidence the Commonwealth did, in fact, present. Rather, that is a function of a factfinder. ***See Commonwealth v. Greth***, 758 A.2d 692, 694 (Pa.Super.

2000) ("It is the function of the jury to weigh any defense evidence against the Commonwealth's prima facie evidence in reaching a verdict."). So long as the Commonwealth presented a *prima facie* case, as I conclude it did, it is for the factfinder at trial, and not this Court, to determine if other evidence contrary to the evidence against the defendant creates reasonable doubt. **Landis**, 48 A.3d at 448; **Hilliard**, 172 A.3d at 10.

The Majority next cites as a reason for its decision the victim's alleged instigation of the altercation. Majority Opin. at 16. But any evidence that he did so would at most support a defense of justification or excuse. Even assuming *arguendo* that there is evidence to support all of the elements of such defenses, once again, we must disregard such evidence at this stage. Contrary to the Majority's approach, at the pretrial stage, we must consider the evidence in the favor of the Commonwealth, and evidence of justification or excuse does not render the Commonwealth's *prima facie* case a nullity. Rather, justification or excuse "is a matter that is properly raised in defense at trial." **Commonwealth v. Benz**, 565 A.2d 764, 767 (Pa. 1989) (opinion announcing judgment of the Court). **See also Commonwealth v. Lopez**, 565 A.2d 437, 440 (Pa. 1989); **Greth**, 758 A.2d at 694.

The Majority similarly weighs the evidence when it declares that to reverse the trial court would be to ask the jury "to rest a verdict on mere speculation or conjecture that Appellee just happens to be the world's worst shot, or that the victim only escaped more serious injury due to divine intervention." **Id.** Respectfully, I believe that reasoning runs counter to a long

line of cases, including **Landis**. As we stated in **Landis**, "it is for the jury to decide the weight to be given to the location of the bullet and the reasons Appellee did not succeed in actually shooting" the victim.

In view of the other evidence in this case, Predmore's failure to shoot the victim – even at relatively close range – does not doom the Commonwealth's case as a matter of law. Rather, when considered in the context of the totality of the evidence, the Commonwealth presented evidence of each element of attempted murder and established sufficient probable cause that Predmore committed the offense. **Santos**, 876 A.2d at 363. As I explain above, a jury could reasonably conclude that a factor such as the struggle for the gun or the victim's flight caused the defendant to miss.

The Majority's reasoning is also contrary to **Hilliard**, where we turned aside a claim that the grant of *habeas corpus* was proper because the trial court had appropriately resolved contradictory evidence. **Hilliard**, 172 A.3d at 14. We instead made clear in **Hilliard** that resolution of inconsistencies in the evidence is for the jury, not this court.

Applying the standards set forth in **Santos**, **Huggins**, **Hilliard**, **Landis**, and the other cases I have cited, I believe that the Commonwealth here presented sufficient evidence to merit submitting the charge of attempted murder to a factfinder. Deeming the Commonwealth's evidence as true for purposes of our review, and making all reasonable inferences from that evidence in the Commonwealth's favor, a factfinder could reconcile the conflicting evidence and find Predmore guilty of attempted murder. It could

reasonably find that Predmore's aiming of the gun at the victim and firing it showed that he specifically intended to kill the victim, but missed because the two engaged in a struggle, the victim turned and ran, and the victim was some distance away. I respectfully dissent.