122 N.J. Super. 119 (1972)
299 A.2d 410
LEONARD M. DESSEL AND ARLENE B. BOGEN, EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF JOSEPH DESSEL, DECEASED, PLAINTIFFS-APPELLANTS,
v.
JULIUS DESSEL, BENJAMIN DESSEL AND METUCHEN FOOD MARKET, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1972.
Decided March 30, 1972.
*120 Before Judges COLLESTER, LYNCH and ALLCORN.
Mr. Roger H. McGlynn argued the cause for appellants (Messrs. McGlynn, Stein & Eberiel, attorneys).
Mr. Richard F. Plechner argued the cause for respondents (Mr. Michael J. Greenwood on the brief).
PER CURIAM.
Plaintiffs, executors under the Will of their deceased father, brought suit against decedent's two surviving brothers and a corporation whose stock is now registered *121 in the brothers' names. The complaint prayed for imposition of a trust on one-third of the corporate stock, with defendant brothers as trustees, for the benefit of decedent's immediate family. Plaintiffs' cause of action was founded upon an alleged agreement to hold the property in trust, and alternatively, on an implied agreement arising "as a result of the relations between the defendants and the decedent." Plaintiffs appeal from a judgment of involuntary dismissal of the complaint, granted on motion at the close of their proofs below.
In his decision, the trial judge held that plaintiffs had failed to satisfy the burden of proof for imposition of a constructive trust. He defined that burden as requiring proof of their case by "clear and convincing" evidence. In this respect, the court was correct. Gray v. Bradley, 1 N.J. 102 (1948); In re Estate of Land, 99 N.J. Super. 500, 506 (Ch. Div. 1968). However, the individual defendants claim that in 1956, they and decedent (each owning one-third of the corporate stock outright at that time) created a joint tenancy among themselves in the stock. They further claim that in 1968, decedent surrendered to defendants his interest as joint tenant in 774 shares of the 775 shares outstanding, with decedent retaining an interest as joint tenant only in the one remaining share. Defendant brothers are thus claiming, at least insofar at the 1968 transaction is concerned, that they were "donees" of that portion of decedent's stock which became the subject matter of the joint tenancy in which they were joint tenants to the exclusion of the decedent.
At the end of the plaintiffs' case, there was evidence from which the following inferences favorable to their cause of action could be drawn:
1) When in 1956 and again in 1962, stock certificates were issued purporting to create a joint tenancy among all three brothers, decedent did not understand that he was surrendering his outright ownership in one-third of the corporate shares to the incidents of a joint tenancy in which all three brothers participated, with respective rights of survivorship *122 implicit therein. It is significant that the decedent was the oldest of the three brothers and that his life expectancy was the shortest. The evidence which might have supported this inference was that on February 15, 1963, the decedent wrote what purported to be a holographic will in which he said, in part: "* * * Any money from the Metuchen Food Market, Inc. should go for living expenses for Ida, Leonard and Harvey Dessel. All stock in the Metuchen Food Market, Inc. shall not be sold without the consent of Benjamin Dessel or Julius Dessel. All stock is left to Arlene Betty Dessel Bogen, Ida Dessel, Leonard Martin Dessel, Harvey Neil Dessel." This attempted disposition of ownership in one-third of the shares of the corporate stock could indicate that decedent did not, subjectively, limit his interest in the stock to that of a joint tenant but rather, conceived himself to be outright owner of one-third of the shares.
2) Several witnesses testified that the decedent, upon many occasions, stated that his one-third interest in the business would go to his son Leonard. This, too, is at odds with any concept that the decedent understood that his interest was limited to a joint tenancy as represented by the two stock certificates.
3) The 1968 certificates whereby decedent purportedly gave up his interest in 774 shares to a joint tenancy wherein his brothers, Julius and Benjamin, were the sole tenants (while retaining a joint tenancy interest in only one share) constituted a gift of his interest in the 774 shares from decedent to his brothers.
Indeed at the end of the plaintiffs' case, the evidence was uncontradicted that the 1968 transaction in fact constituted such a gift. Therefore the principle set forth in In re Dodge, 50 N.J. 192 (1967), is brought into play:
The principle has been expressed frequently that "in all transactions between persons occupying relations, whether legal, natural, or conventional in their origin, in which confidence is naturally inspired, is presumed, or, in fact, reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed *123 and who has acquired an advantage, to show affirmatively not only that no deception was practiced therein, no undue influence used, and that all was fair, open, and voluntary, but that it was well understood." [Id. at 227].
The purpose of that rule is not so much to afford protection against undue influence exercised upon the donor "* * * as it is to afford him protection against the consequences of voluntary action on his part, induced by the existence of the relationship between them [the donor and donee], the effect of which upon his own interests he may only partially understand or appreciate." Slack v. Rees, 66 N.J. Eq. 447, 449 (E. & A. 1904), as quoted in In re Dodge, supra, 50 N.J. at 228. (Emphasis added). "In such a situation," said Justice Francis in the latter case, "the donee must show by explicit and convincing evidence that the donor intended to make a present gift and unmistakably intended to relinquish permanently the ownership of the subject of the gift." Id. (Emphasis added).
There is no doubt that there was a relationship of confidence among the decedent and his two brothers and, in the surrender of his interest in the 774 shares to his brothers as set forth above, they acquired an advantage. Thereupon it became defendants' burden to go forward with their proofs and to affirmatively prove by explicit and convincing evidence, that no deception was practiced in the issuance of the several certificates, that no undue influence was used, and that the transaction was fair, open, voluntary and well understood.
There is no testimony here tending to establish that the 1968 transactions satisfied the foregoing criteria. The crucial stock certificates were endorsed September 19, 1968. On the day before, September 18, 1968, the decedent had executed and published a codicil to his will. This Will was prepared by the attorney who tried the case on behalf of the defendants below. It is possible that the same person drew the certificates the day after the codicil was executed. The attorney was present in court at the trial below and he might *124 have been a material witness as to the circumstances relevant to the criteria of In re Dodge, set forth above. Further, the testimony of the defendant brothers at the trial could also lead to the inference that none of the three brothers understood the significance of the certificates which actually created a joint tenancy of the 774 shares in the two defendant brothers Julius and Benjamin.
Therefore the court erred in granting the defendants' motion to dismiss at the end of the plaintiffs' case, rather than requiring defendants to go forward with their proofs.
Reversed and remandeed for a new trial.
COLLESTER, P.J.A.D. (dissenting).
I respectfully disagree with the conclusions reached by the majority.
At the close of plaintiffs' case there was no evidence nor legitimate inferences to be drawn therefrom of an express or implied agreement by defendants to create a trust in one-third of the corporate stock of Metuchen Food Market, Inc. There was no evidence to support the imposition of a constructive trust. There being no such proof the trial judge properly entered a judgment of involuntary dismissal.
In my opinion In re Dodge, 50 N.J. 192 (1967) is inapposite. This is not a case where defendants were asserting a claim against the decedent's estate and thus would have the burden of establishing such a claim by clear and convincing proof.
I would affirm.