**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4183-17T2

NEAL SILBERBERG,

    Plaintiff-Appellant,

v.

FEDERATED HOMES
and COLLEGIATE TITLE,

    Defendants-Respondents,

and

ANNIE MAC MORT.,

    Defendant.

_____

        Submitted October 28, 2019 – Decided December 20, 2019

        Before Judges Sumners and Natali.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7971-16.

        Neal Silberberg, appellant pro se.

        Respondents have not filed briefs.

PER CURIAM

Plaintiff Neal Silberberg, a self-represented real estate broker, appeals from a March 20, 2018 Law Division order granting an involuntary dismissal under Rule 4:37-2(b) in favor of defendants Federated Homes, the designated listing broker, and Collegiate Title, the designated closing agent, and dismissing his claim that he was owed $5490, specifically an additional three percent sales commission from the sale of a Department of Housing and Urban Development (HUD) property in Newark. After considering plaintiff's arguments in light of the applicable legal principles, we affirm in part, and reverse and remand in part.

I.

We glean the following facts from the trial record. In May 2016, HUD offered for sale a residence at 61-63 Scheerer Avenue in Newark through its Good Neighbor Next Door (GNND) program. The purpose of the GNND program is to improve the quality of life in distressed urban communities by encouraging law enforcement officers, teachers, firefighters, and emergency medical technicians to purchase homes in these communities at a fifty percent discount. Since the property prices are heavily discounted, HUD's policy requires that the purchaser be completely responsible for the customary six percent broker commission. Consequently, all broker commissions resulting

A-4183-17T2

from GNND transactions require a private agreement between the purchaser and the real estate brokers.

Plaintiff submitted a bid for the GNND property through HUD's website on behalf of Craig McDaniel, a Newark public school teacher. Plaintiff testified without objection that after McDaniel was selected by HUD's lottery bidding process, he worked personally with McDaniel to purchase the home, which "took five months to close." Plaintiff further testified that McDaniel needed to reduce his student loan debt before he could qualify for a mortgage and plaintiff "helped him get that qualification so he could buy the house." According to plaintiff's complaint, he also helped McDaniel complete "HUD's standard contract package," along with an alleged "private contract with [McDaniel] . . . [executed on May 13, 2016,] wherein [McDaniel] was to pay [his] [six percent] brokerage commission," which he sent to defendants prior to closing.

Plaintiff testified that listing broker "[c]ommissions are not guaranteed and the listing broker may receive a modified, or reduced commission, or no commission in the event an alternative disposition strategy is involved." According to plaintiff, Federated Homes did "not present[] any proof . . . that HUD agreed to change the commission so that [it] would get their listing commission" in a GNND sale, which he asserts "was an alternative disposition

3

strategy . . . used by HUD." Accordingly, plaintiff alleged that "[a]t the time that [he] signed the [May 23, 2016 sales] contract with [McDaniel,] [McDaniel] signed a commission agreement to pay [plaintiff] a six percent commission," which was "strictly a private commission agreement between . . . [plaintiff] and McDaniel," because the agreement stated "'[t]he real estate commission is to be paid to the broker' . . . [and] doesn't say 'to the brokers.'" Plaintiff emphasized that Federated Homes was "not part of [the May 13, 2016] private agreement."

Plaintiff further testified that Federated Homes was not entitled to a commission because "[t]he [May 23, 2016 sales] contract didn't show a . . . commission being paid by HUD [to Federated Homes]." In arguing against involuntary dismissal, plaintiff also stated that according to the sales contract, "[plaintiff] was the selling broker," but "the only function [Federated Homes] performed in this transaction" was that "the earnest money deposit had to be given to [them]."

The May 13, 2016 contract acknowledged that HUD does not pay the commission on GNND properties, and that it was McDaniel's responsibility to pay the customary six percent commission HUD would pay if this were not a GNND property. McDaniel was the only party to sign the contract, and the contract makes no specific reference to plaintiff. The May 13, 2016 contract,

A-4183-17T2

nevertheless, states that the purchaser authorizes the lender to include the commission in the mortgage or make the commission payment directly to the "broker" at closing.

In the May 23, 2016 sales contract between McDaniel and HUD, McDaniel agreed to purchase HUD's property located at 61-63 Scheerer Avenue in Newark for $183,000. Lines 6(a) and 6(b) of that contract, which typically indicate the amount of commission HUD would pay to the selling and listing brokers, were left blank. The sales contract indicated that McDaniel's $1000 deposit would be held by Federated Homes, the closing would take place at Collegiate Title's office, and plaintiff was the broker.

Collegiate Title's chief executive officer, Richard Ransom, testified that typically, "[t]hroughout the transaction[,] [Collegiate Title] communicate[s] with all parties," including HUD's representative, the brokers, and the lender.[1] He also acknowledged that part of Collegiate Title's "standard operating procedure" was that it "would go through each one of [the] disbursements" and

---

[1] The parties agreed that Collegiate Title could call Ransom out of order during plaintiff's case-in-chief. As noted, the court dismissed plaintiff's claims at the close of his case pursuant to Rule 4:37-2(b). We are satisfied from reviewing the court's ruling that it did not rely upon Ransom's testimony when deciding defendants' motions and based its decision on the proofs offered by plaintiff. In any event, were we to consider Ransom's testimony, we would reach the same result.

A-4183-17T2

"explain it to the buyer before he signs it," and it would obtain the purchaser's signature on the closing disclosure, as well as "all the other closing documentation."

According to Ransom, Collegiate Title received a commission bill from plaintiff, in addition to a commission bill from Federated Homes claiming it was entitled to $5490 upon disbursement of the mortgage funds, half of the six percent commission McDaniel agreed to pay. Collegiate Title forwarded the signed closing documents back to Annie Mac Mortgage (Annie Mac), McDaniel's lender, who then authorized Collegiate Title to disburse the six percent commission, $5490 to plaintiff and $5490 to Federated Homes.

Upon receipt of $5490, plaintiff notified Collegiate Title and Federated Homes that he was entitled to $10,980, the entire six percent commission. According to an email plaintiff introduced at trial, Collegiate Title denied any error with the disbursement of commission stating that it "checked . . . [HUD's] Yardi P260 system and it reflect[ed] two realtors, not just [plaintiff]."

Plaintiff did not contact HUD to dispute the commission split, but he instead brought an action against Federated Homes, Annie Mac, and Collegiate Title. In his November 18, 2016 complaint, plaintiff requested relief "based upon the doctrine of joint and several liability," and "demand[ed] [his] full

broker commission, all costs of bringing this suit, punitive damages due to the gross misconduct of the parties for [i]ntentionally interfering with . . . plaintiff's right to earn his commission, and compensatory damages." Plaintiff asserted that Collegiate Title's denial of the full commission "was done intentionally and with prejudice" because he "stopped referring title work business to [Collegiate Title]," and that Federated Homes "became a party to the commission controversy" because they accused plaintiff of being dishonest which "may have influenced Collegiate [Title]'s decision to act improperly."

At a March 2, 2018 hearing, Annie Mac successfully moved for summary judgment against plaintiff arguing that other than lending McDaniel the funds to purchase the home, it had no relationship with plaintiff, had no contract with plaintiff, and owed no duty of care to plaintiff. At the same hearing, plaintiff unsuccessfully moved to amend his complaint, and for summary judgment against Federated Homes.

With respect to his summary judgment motion, plaintiff argued "this whole case has to do with a contract" and "[Federated Homes] interfered with [his] contractual rights because they ignored what was a private agreement [between plaintiff and McDaniel]." He further contended that Federated Homes "had no contract with [McDaniel]" and "the contract [it] had with [HUD] didn't say

7

anything about [Federated Homes] having a right to intervene in a private contract between a buyer and a real estate agent."

In addition to his own testimony, at trial, plaintiff submitted into evidence the sales contract between McDaniel and HUD, the email from Collegiate Title denying any error with the disbursement of commission, and a listing for the residence that Federated Homes placed on the Garden State Multiple Listing Service (GSMLS), which indicated Federated Homes was entitled to a three percent commission. Defendants also submitted what plaintiff stipulated as the "commission agreement" signed only by McDaniel, as well as the disbursement statement that itemized the distribution of mortgage funds at closing, including $5490 to plaintiff and $5490 to Federated Homes.

Defendants moved for an involuntary dismissal at the close of plaintiff's case and the court issued an oral opinion and order granting defendants' applications. In its oral decision the court noted that it discerned five causes of actions from plaintiff's pleadings and trial proofs: consumer fraud, common law fraud, negligence, breach of contract, and third-party beneficiary liability. The court concluded plaintiff failed to establish a prima facie case with respect to any of the claims.

The court held that plaintiff failed to establish a consumer fraud claim as he could not demonstrate that defendants "concealed, suppressed, or omitted a material fact knowingly and with the intent that others rely on the omissions." Additionally, it found that neither defendant met the statutory definition of a merchant under N.J.S.A. 56:8-2.

The court similarly found that plaintiff failed to establish a common law fraud claim as he could not demonstrate "that there was ever any material misrepresentation by these defendants." The court further held that plaintiff failed to prove a negligence claim as he could not demonstrate that a duty of care was owed by either defendant to the plaintiff. The court also determined that plaintiff failed to establish a breach of contract claim because he did not demonstrate that there was any privity of contract between plaintiff and defendants, and plaintiff stipulated that no such privity ever existed.

The court finally considered plaintiff's potential "third party liability" claim since he asserted that he was listed as the broker on the sales contract provided to defendants before the closing. Relying on Weichert Co. Realtors v. Ryan, 128 N.J. 427 (1992), the court concluded plaintiff failed to establish a claim that he was a third-party beneficiary reasoning that no writing existed between the parties that specified plaintiff's commission percentage. The court

9

noted that plaintiff failed to demonstrate "a valid reason to deviate from the ordinary writing requirement without satisfying these elements . . . as to a third [-]party liability."

After trial, plaintiff unsuccessfully moved for reconsideration of a previous, adverse summary judgment ruling he filed against Federated Homes and to reinstate Annie Mac as a defendant. At an April 13, 2018 hearing, the court issued an oral opinion and held there was no basis to reconsider its decision because plaintiff "[did] not identify any controlling law that [it] overlooked when rendering its decision . . . [n]or has . . . plaintiff identified what competent evidence [it] failed to appreciate."

At the same hearing, plaintiff also moved to amend his complaint to add McDaniel as a defendant. The court denied his motion and reasoned that plaintiff "cannot now wait until after parts of his case had been dismissed on [s]ummary [j]udgment, and others have been dismissed by the trial judge, and now seek to amend his complaint to bring . . . an entirely new matter against . . . McDaniel." The court also noted that plaintiff failed to comply with Rule 4:9-1 because he did not attach a copy of the proposed amended complaint, and the court accordingly was unable to determine whether plaintiff had a viable

A-4183-17T2

claim against McDaniel. Plaintiff has not challenged the court's decision on either of the two motions.[2]

On appeal, plaintiff argues: (1) the court erred in granting an involuntary dismissal to defendants because it failed to understand the legal significance of an open market, non-exclusive listing; (2) the court erred when it did not find that defendants tortiously interfered with his right to collect his real estate commission; and (3) Federated Homes had unclean hands so it could neither claim a real estate commission nor challenge plaintiff's right as a third-party beneficiary to the sales contract to collect a commission.

We agree, in part, with plaintiff's first point that the court erred in granting defendants' involuntary dismissal applications with respect to his negligence claim against Collegiate Title. We also conclude the court erred in dismissing its claims against Federated Homes because it failed to consider plaintiff's claim against Federated Homes under a constructive trust theory. We conclude, however, that the court's findings dismissing plaintiff's fraud, breach of contract, and third-party beneficiary claims are fully supported by the record.

---

[2] After filing his appeal, we granted plaintiff's motion to dismiss his claims against Annie Mac in a January 16, 2019 order.

A-4183-17T2

## II.

We initially address the significant procedural deficiencies with respect to plaintiff's brief and appendix as it relates to our appellate review. In plaintiff's merits brief, he failed to include appropriate "point headings to be argued," R. 2:6-2(a)(1), a list of the judgments with reference in the record where the trial judge's opinion is located, Rule 2:6-2(a)(2), or a table of citations. R. 2:6-2(a)(3). Procedural errors of this type may serve as a basis to dismiss an appeal. See Cherry Hill Dodge, Inc. v. Chrysler Credit Corp., 194 N.J. Super. 282, 283-84 (App. Div. 1984) (holding that a failure to comply with the rules on appeal is sufficient reason for dismissal of the appeal).

Plaintiff further includes evidentiary material in his appellate appendix that is neither of record, judicially noticeable, nor stipulated. Plaintiff did not seek to supplement the record on appeal, nor did he move for a limited remand to permit the trial court to consider these materials in the first instance, as the Rules permit. See R. 2:5-4(a); R. 2:9-1(a). We overlook these marked procedural deficiencies, in part, and address the merits presented by plaintiff's appeal, but we limit our review to the competent evidentiary materials that were presented to the trial court. We neither consider nor recite the information provided by plaintiff for the first time on appeal.

A-4183-17T2

## III.

In our review of an order on a defendant's motions for involuntary dismissal, Rule 4:37-2(b), and for judgment at the close of all of the evidence, Rule 4:40-1, we employ the same standard as the trial court. Filgueiras v. Newark Pub. Sch., 426 N.J. Super. 449, 455 (App. Div. 2012). We apply the following evidential standard: "[i]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him [or her] the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied." Id. at 456 (quoting Verdicchio v. Ricca, 179 N.J. 1, 30 (2004)). Stated differently, "[u]nder Rule 4:37-2(b), a motion for [an involuntary dismissal] is granted only if, accepting the plaintiff's facts and considering the applicable law, 'no rational [fact-finder] could draw from the evidence presented' that the plaintiff is entitled to relief." Prioleau v. Ky. Fried Chicken, Inc., 434 N.J. Super. 558, 569 (App. Div. 2014) (quoting Pitts v. Newark Bd. of Educ., 337 N.J. Super. 331, 340 (App. Div. 2001)). If reasonable minds could reach different conclusions, the motion must be denied. Id. at 570.

Substantively, plaintiff first contends that the court erred when it granted defendants' involuntary dismissal applications because it failed to understand

that GNND properties are sold through open market, non-exclusive listings. Plaintiff maintains that for GNND listings, HUD's typical listing brokers do not have an exclusive listing contract to promote the property, and thus, if another broker sold the property, listing brokers could not claim any part of the commission. We agree that accepting plaintiff's testimony and documentary evidence as true, and affording him all reasonable inferences from that evidence, plaintiff established, at a minimum, a negligence claim against Collegiate Title and a constructive trust action against Federated Homes.

"[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). Plaintiff bears "the burden of establishing those elements 'by some competent proof.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)).

As noted, we disagree with the court's conclusion that plaintiff's proofs failed to establish a prima facie claim of negligence, at least as to Collegiate Title, because Collegiate Title did not have duty to plaintiff. If plaintiff's proofs are accepted as true, Collegiate Title improperly transmitted a three percent

commission to Federated Homes without a legal or factual basis. Collegiate Title clearly had a duty to ensure that funds from the sale of the property were disbursed appropriately. The May 23, 2016 sales contract listed a single broker to whom a commission was owed. Although plaintiff was identified in the contract, Federated Homes was not. As such, we are satisfied that plaintiff presented sufficient evidence to surmount the low bar of a Rule 4:37-2(b) application. A rational factfinder could draw from the evidence that Collegiate Title breached its duty to perform its closing responsibilities because it disbursed settlement funds to a party who did not have a right to those sums.

IV.

We also conclude the court erred in dismissing plaintiff's claims against Federated Homes. When characterizing plaintiff's claims against the parties, the court failed to recognize that plaintiff appeared to allege a constructive trust claim against Federated Homes.

"A constructive trust is a remedial device through which the 'conscience of equity' is expressed [and] it will be imposed when a person has acquired possession of or title to property under circumstances which, in good conscience, will not allow the property's retention." Thompson v. City of Atlantic City, 386 N.J. Super. 359, 375-76 (App. Div. 2006) (citing Flanigan v.

Munson, 175 N.J. 597, 608 (2003)); Stewart v. Harris Structural Steel Co., Inc., 198 N.J. Super. 255, 266 (App. Div. 1984). "The circumstances in which a constructive trust may be imposed are as extensive as required to reach an equitable result." Id. at 376.

"[A] constructive trust is a powerful tool to be used only when the equities of a given case clearly warrant it." Flanigan, 175 N.J. at 611. Thus, the party asserting that a constructive trust should be imposed bears the burden of establishing its right to the remedy with clear and convincing evidence. Dessel v. Dessel, 122 N.J. Super. 119, 121 (App. Div. 1972). Under this standard, the party seeking the remedy "should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006) (quoting In re Purrazzella, 134 N.J. 228, 240 (1993)).

"[T]he imposition of a constructive trust requires a two-part finding that the res has been received or retained through a 'wrongful act' which 'unjustly enriches' the recipient." Thompson, 386 N.J. Super. at 376-77 (citing Flanigan, 175 N.J. at 608). A wrongful act is "usually, though not limited to, fraud, mistake, undue influence, or breach of a confidential relationship," D'Ippolito v. Castoro, 51 N.J. 584, 589 (1968) (citing Neiman v. Hurff, 11 N.J. 55, (1952)),

16

and can include "innocent misstatements, or even simple mistakes." Flanigan, 175 N.J. at 609 (quoting Dan B. Dobbs, Remedies, § 4.3 (1973)).

Here, during plaintiff's direct testimony he alleged that Federated Homes had no right to a commission with respect to the sale. He contended that the May 13, 2016 agreement which he solely prepared reasonably could be interpreted to allow him the entire six percent commission. Further, he maintained that Federated Homes was not listed as a broker on the May 23, 2016 sales agreement as he was the sole broker identified. By accepting the $5490 commission without a legal right to those sums, Federated Homes arguably committed a "wrongful act."[3]

V.

We agree, however, with the court's ruling dismissing plaintiff's consumer fraud, fraud, breach of contract and third-party beneficiary claims. To establish a cause of action under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, plaintiff was required to prove three elements: "1) unlawful conduct . . . 2) an

_____

[3] Because we have concluded that plaintiff established, again for Rule 4:37-2(b) purposes, sufficient proofs to sustain a cause of action against each defendant, we need not address plaintiff's other arguments, first raised on appeal that he also properly established claims against defendants under an "unclean hands" and/or "tortious interference" theory. Nothing in our opinion precludes plaintiff from raising these claims before the trial court on remand.

A-4183-17T2

ascertainable loss . . . ; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009).

The unlawful conduct is "an 'unlawful practice' as defined in the legislation." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations. The first two are found in the language of N.J.S.A. 56:8-2, and the third is based on regulations enacted under N.J.S.A. 56:8-4." Ibid.

There is no support in the record that demonstrates either defendant affirmatively made a misstatement or omission. In this regard, plaintiff failed to submit any evidence to support the allegations in his complaint that Federated Homes accused plaintiff of being dishonest to influence Collegiate Title's decision not to disburse the full commission to plaintiff, and that Collegiate Title's actions were in retaliation for plaintiff stopping his referral of clients to them. Further, plaintiff failed to demonstrate a causal nexus between Federated Homes' purported affirmative statements or concealment of a material fact and his loss.

18

Plaintiff similarly failed to establish a claim for common law fraud because he again could not demonstrate that there was a material misrepresentation by defendants. To have established a claim for common law fraud, plaintiff was obligated to establish the following five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citation omitted). As noted, there is no evidence in the record to indicate either defendant knowingly made a material misrepresentation or omission, and plaintiff failed to identify what omission he relied upon that would satisfy the third element of a common law fraud claim.

Plaintiff also failed to establish defendants breached a contract with him. To establish a breach of contract claim, plaintiff is required to prove that (1) "[t]he parties entered into a contract containing certain terms"; (2) "plaintiff did what the contract required [him] to do"; (3) "defendant[s] did not do what the contract required the defendant[s] to do"; and (4) "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff." See Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016). Here, no such contract exists

19

between plaintiff and either defendant, as plaintiff testified that McDaniel was the only party to whom he contracted.

For similar reasons, we conclude the court properly dismissed any claim asserted by plaintiff under a third-party beneficiary theory. "It is well settled in New Jersey that contract interpretation must be based on the intent of the parties." M.G.M. Constr. Corp. v. N.J. Educ. Facilities Auth., 220 N.J. Super. 483, 487 (App. Div. 1987). As our Supreme Court has explained:

> The determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract. They are the persons who agree upon the promises, the covenants, the guarantees; they are the persons who create the rights and obligations which flow from the contract . . . . Thus, the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention.
>
> [Broadway Maint. Corp. v. Rutgers, State Univ., 90 N.J. 253, 259 (1982) (quoting Brooklawn v. Brooklawn Hous. Corp., 124 N.J.L. 73 (E. & A.1940)).]

"The contractual intent to recognize a right to performance in the third person is the key. If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." Ibid. Mindful that the judicial task is simply interpretative, this court should examine the contractual

20

terms to ascertain the parties' intent and in doing so accord contractual terms "their plain and ordinary meaning." M.J. Paquet v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002).

Stated differently, when determining the existence of third-party beneficiary status, the inquiry "focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." Ross v. Lowitz, 222 N.J. 494, 513 (2015) (quoting Broadway Maint. Corp. v. Rutgers, 90 N.J. 253, 259 (1982)). "If there is no intent to recognize the third party's right to contract performance, 'then the third person is only an incidental beneficiary, having no contractual standing.'" Ibid. (quoting Broadway Maint. Corp., 90 N.J. at 259). Here, as noted, neither defendant was a party to the May 23, 2016 sales contract and there is no support in the record to hold these defendants liable under a third-party beneficiary theory.

## VI.

In sum, plaintiff presented sufficient evidence to support, at a minimum, a negligence claim against Collegiate Title and a constructive trust action against Federated Homes. Consequently, we affirm in part and reverse and remand in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4183-17T2