**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3996-22

FRANCISCO MATOS, RAMONA
MATOS, and NOEL MATOS,
as ATTORNEY IN FACT,

     Plaintiffs-Appellants,

v.

JOHN CUETO and ARLENE
MATOS CUETO,

     Defendants-Respondents.

_____

Argued October 17, 2024 – Decided October 25, 2024

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0019-21.

Robert G. Ricco argued the cause for appellants.

Nancy Heslin Reading argued the cause for respondents (The Reading Law Firm, LLC, attorneys; Nancy Heslin Reading, on the brief).

PER CURIAM

Plaintiffs Francisco and Ramona Matos, and their son Noel Matos[1] appeal from a July 22, 2022 order denying their motion for summary judgment and an August 4, 2023 final judgment following a bench trial.  We affirm.

Noel and defendant Arlene Matos Cueto[2] are siblings and the children of Francisco and Ramona, both of whom are elderly.  Defendant John Cueto is Arlene's husband; the couple was married in 2018.  Francisco and Ramona did not complete a formal education and worked blue collar jobs their whole lives, managing to accumulate retirement savings.  John has a postgraduate degree in business administration.

In August 2014, Francisco and Ramona retired and began renting an apartment in Florida.  They requested defendants' help with finding a new home and wrote John, then Arlene's fiancé, a check for $50,000 toward the purchase of a property.  In December 2014, John purchased a home in Miami, Florida for Francisco and Ramona to live in for $160,000.  Francisco and John signed a document stating John did not have to re-pay the $50,000.  The bank required

---

[1] Noel is attorney-in-fact for Francisco and Ramona.  We utilize their first names because they share a common surname.  We intend no disrespect.  At oral argument, we learned that Francisco has passed away.

[2] Because Arlene and John share the same surname, we utilize their first names. We intend no disrespect.

the document as a condition for giving John a mortgage. John's name was the only one listed as the buyer on the deed, Housing and Urban Development settlement statement, and closing disclosure.

Francisco and Ramona resided in the Florida home, and paid defendants $900 per month in rent. Some months later, Ramona broke her hip while visiting Arlene and John in New Jersey. Francisco and Ramona realized they needed their children as a support system and decided to return to New Jersey.

In December 2015, John sold the Florida home. He was the only person listed as the seller on the closing documents. In April 2016, John purchased a second property in Hamburg, nearby the home he shares with Arlene, using the sales proceeds of the Florida home. John was the only person listed as the buyer on the closing documents.

John attempted to purchase the Hamburg home with a mortgage but was denied. Francisco agreed to pay off John's $15,000 car loan to increase his chances of getting a mortgage. In return, John reduced Francisco and Ramona's rent by $500 per month until he had fully reimbursed them for the pay-off of the auto loan. This took three years, after which Francisco resumed paying John $1,500 per month in rent.

Notwithstanding the rent paid by Francisco and Ramona, John and Arlene

3

paid a total of $7,784.69 for the mortgage; taxes and insurance; and homeowners association (HOA) fees on the Hamburg property, which amounted to a monthly subsidy of $284.69. John contended the $1,500 never covered all the carrying costs for the property.

In early 2020, Noel moved into the Hamburg home with his parents. He learned that John owned the property when he received a letter from the HOA addressed to John. Noel conducted a title search and verified his parents did not own the property. He questioned the arrangement his parents had regarding the $50,000 to fund the Florida property purchase, and who owned the Florida and Hamburg properties.

In January 2021, plaintiffs filed a ten-count complaint and order to show cause in the Chancery Division, alleging: breach of contract; accounting; detrimental reliance; unjust enrichment; constructive fraud; breach of fiduciary duty; common law fraud; consumer fraud; undue influence; and negligence. The trial court transferred the matter to the Law Division.

Each side moved for summary judgment. Plaintiffs argued defendants had exerted an undue influence on Francisco to pay the $50,000 because they and defendants had a confidential relationship as family members. They claimed the $50,000 was not a gift and the undue influence was proved by the fact John got

4

Francisco to pay off his auto loan. Therefore, summary judgment on the unjust enrichment and other claims was appropriate because defendants failed to rebut the presumption of a confidential relationship under Pascale v. Pascale, 113 N.J. 20 (1988).

Defendants argued they rebutted the presumption of undue influence because the $50,000 was a gift. Also, plaintiffs failed to present any evidence defendants had been unjustly enriched through the purchase of the Florida home.

The trial judge found a confidential relationship existed between the parties. This was evidenced by Francisco and Ramona's educational backgrounds, lack of fluency in English, and the fact they sought defendants' help on a host of matters on a regular basis, including when they lived in Florida. However, there was no undue influence because Francisco understood the nature of the transactions, and he was never influenced or coerced by defendants into transferring the $50,000.

Still, the judge found there were "glaring questions of fact regarding the circumstances of alleged undue influence." Francisco answered nine deposition questions with "I don't remember," and Ramona testified she does not understand English and therefore knew nothing of the details of the arrangement discussed between Francisco, Arlene, and John. The judge found it was

significant there was "no deposition testimony, certification, or affidavit of a disinterested individual with personal knowledge of the issues . . . ."

On July 22, 2022, the trial judge issued an order denying plaintiffs' summary judgment motion and granting in part defendants' cross-motion for summary judgment. The judge denied plaintiffs summary judgment on the unjust enrichment and undue influence counts and scheduled a trial. He found there were genuine issues of material fact regarding whether defendants were unjustly enriched at the expense of plaintiffs because of the $50,000 transfer. Also, "[p]laintiffs have realized the benefits of the gift by way of having a pleasant, safe, and secure place to live . . . ." The central question was whether "the $50,000[] 'gift' to John for the purchase of the Florida and New Jersey homes in his name unjustly enriched [d]efendants at the expense of [p]laintiffs through the potential flow of equity from the [p]laintiffs."

The trial judge also rejected plaintiffs' breach of fiduciary duty claim because although there was a confidential relationship, it was undisputed the parties lacked a formal agreement that would formally establish a fiduciary duty. Although plaintiffs argued the fiduciary duty was established through "[John]'s superior knowledge and skill in financial dealings . . . throughout his dealings with [p]laintiffs, it is undisputed that at no point did [John] act as a real estate

broker, [p]laintiffs' financial planner, or hold the power of attorney on [p]laintiffs' behalf."  The judge dismissed the remaining counts of the complaint.

After the summary judgment rulings, the trial judge conducted a four-day bench trial in March and April 2023.  He concluded Francisco wanted to rent the Florida property but did not want to buy it.  This was evidenced by the fact Francisco had $160,000 in his savings account after paying the $50,000.  Although Francisco and Ramona could have purchased the property "outright[,]" it would have left them with little savings.  There was no testimony or evidence of any effort by Francisco and Ramona to obtain a mortgage to purchase the Florida property and no evidence defendants had influenced or deterred them from applying for a mortgage.  There was no writing, or other form of communication in evidence, that clarified the details of the arrangement.  The judge concluded there was "nothing nefarious, . . . untoward, or suspicious" about John's actions and it was "along the line of what was something of history in the family of helping each other out."[3]

The judge found that, notwithstanding the existence of a confidential relationship between the parties, there was no evidence of undue influence.  The

---

[3] The history referenced by the judge included a similar transfer Francisco made to Arlene and her first husband to purchase a different property.

A-3996-22

$50,000 transaction did not satisfy the criteria for a gift.  "Rather, it was part of a plan to assist in making the living arrangements for Ramona and Francisco viable."  "The string attached was you're going to use this to buy a house that we can live in."  As there was no evidence the $50,000 was either a gift or a conditional gift, the judge required the sum to be re-paid when the Hamburg residence is sold.

Likewise, the judge found the Hamburg property purchase "was concocted for . . . benevolent motives . . . borne out of and generated by a desire and intention of John[ny] with Arlene's cooperation and assistance to assist Francisco and Ramona to have a safe place to live in close proximity to where they lived."  There was also no unjust enrichment because the evidence proved John "owned the property, and he's been responsible for paying the mortgage, taxes, and [HOA] fees" for "about six and a half years or so."  And "in between the Florida sale and the New Jersey purchase, Francisco and R[amona] were staying and living with Arlene and John[ny] in . . . their [New Jersey] residence . . . ."

On August 4, 2023, the judge entered a final judgment dismissing the undue influence count and granting in part the unjust enrichment claim, holding John had to reimburse plaintiffs the $50,000, because "there [was] insufficient

A-3996-22

proof . . . [p]laintiff(s) made and intended an unconditional gift."  The judge ruled the $50,000 would be paid as a condition of any future sale of the Hamburg residence.  The property would remain in John's name, plaintiffs would continue to pay $1,500 per month to occupy the home and be responsible for all the expenses associated with it, except that John was responsible for the mortgage, real estate taxes, and HOA fees.

The trial judge denied plaintiffs' subsequent request for a stay pending appeal.  Following the filing of the appeal, we granted plaintiffs' motion for stay.

I.

We review a trial court's summary-judgment order de novo, applying the same standard as the trial court.  Stewart v. N.J. Tpk. Auth./Garden State Pkwy., 249 N.J. 642, 655 (2022).  Under that standard, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law."  Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting R. 4:46-2(c)).

Our review of a judgment entered following a bench trial is very limited and deferential.  D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013).  When the trial judge acts as the fact finder in a bench trial, we "must accept the factual

findings of" that trial judge, when such findings "are 'supported by sufficient credible evidence in the record.'" State v. Mohammed, 226 N.J. 71, 88 (2016) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). We will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"Deference is particularly appropriate when the court's findings depend on credibility evaluations made after a full opportunity to observe witnesses testify, Cesare v. Cesare, 154 N.J. 394, 412 (1998), and the court's 'feel of the case.'" Accounteks.Net, Inc. v. CKR L., LLP, 475 N.J. Super. 493, 503 (App. Div. 2023) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "In reviewing the judge's findings, '[w]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence.'" 160 W. Bdwy. Assocs., LP v. 1 Mem'l Drive, LLC, 466 N.J. Super. 600, 610 (App. Div. 2021) (alteration in original) (quoting Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008)). "However, we owe no deference to the

judge's interpretation of the law and the legal consequences that flow from established facts." Ibid. (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

II.

Plaintiffs argue the trial judge erred because he did not impose a constructive trust on the Hamburg property for their benefit and shift the burden of proof to defendants after finding there was a confidential relationship. Instead, they assert the judge required them to prove they owned the home rather than require defendants to prove they were the intended beneficiaries. Plaintiffs assert because there was no evidence defendants were the intended beneficiaries of the arrangement and "it [was] presumed Francisco did not understand the ramifications of his actions." Thus, a constructive trust was the only means to make Francisco whole because he believed he was paying for a home that belonged to him.

Plaintiffs allege the trial judge also erred because he found a joint venture, when neither party claimed one existed. He also incorrectly calculated the unjust enrichment award and allowed defendants to retain legal and equitable title in the Hamburg property. They claim he should not have dismissed the breach of fiduciary duty count.

11

## A.

A constructive trust is an extraordinary equitable remedy, which should "be used only when the equities of a given case clearly warrant it." Flanigan v. Munson, 175 N.J. 597, 611 (2003). To establish a constructive trust "a court must find that a party has committed 'a wrongful act.'" Id. at 608 (quoting D'Ippolito v. Castoro, 51 N.J. 584, 589 (1968)). "Second, the wrongful act must result in a transfer or diversion of property that unjustly enriches the recipient." Ibid. (citation omitted). A wrongful act is typically "fraud, mistake, undue influence, or breach of a confidential relationship . . . ." D'Ippolito, 51 N.J. at 589 (citing Neiman v. Hurff, 11 N.J. 55 (1952)), but can include "innocent misstatements, or even simple mistakes . . . ." Flanigan, 175 N.J. at 609. The party seeking the constructive trust bears the burden of establishing its right to the remedy through clear and convincing evidence. Dessel v. Dessel, 122 N.J. Super. 119, 121 (App. Div. 1972).

"A presumption of undue influence arises in connection with transactions inter vivos where a confidential relationship exists between the donee and donor or grantee and grantor without additional circumstances. . . . This presumption is more easily raised than that affecting wills, as one is not likely to give away inter vivos what he still can enjoy." Bronson v. Bronson, 218 N.J. Super. 389,

394 (App. Div. 1987) (citing 5 N.J. Practice Clapp, Wills & Administration (3 ed. 1982), § 62 at 226, n. 15 (omission in original)).  Where a confidential relationship exists between a plaintiff and defendant, the burden of proof shifts to the defendant to show "by clear and convincing evidence not only that 'no deception was practiced therein, no undue influence used, and that was fair, open and voluntary, but that [the transfer] was well understood.'"  Pascale, 113 N.J. at 31 (quoting In re Dodge, 50 N.J. 192, 227 (1967)).

Pursuant to these principles, we find no error in the trial judge's refusal to impose a constructive trust.  There was no clear and convincing evidence presented of a wrongful act by John to show he exerted undue influence on Francisco and Ramona.  The judge found the deal was "concocted for . . . benevolent motives . . . the motivation for all of this was borne out of and generated by a desire and intention of John[ny] with Arlene's cooperation and assistance to assist Francisco and Ramona to have a safe place to live in close proximity to where they lived."  Defendants' motives only came into question after Noel learned the Hamburg home was in John's name.  However, the evidence showed John did not propose the $50,000 payment; Francisco did. John never considered doing anything with the $50,000 but to put it to purchasing the Florida home.  He understood the money was to be used to help

him buy a house selected by Francisco, for plaintiffs to live in. There was no objective evidence presented to the contrary.

Francisco did not suffer a detriment. The judge found when John purchased the Florida property, plaintiffs were living in a "borderline decrepit" apartment and were about to rent elsewhere. Instead, plaintiffs got to live in the house they selected in Florida, while John took on the risk of a mortgage. John also took on a burden with the Hamburg property because its rent was far below market rate. Therefore, defendants rebutted the presumption of undue influence.

The judge bolstered this conclusion by finding as follows:

> [N]oting the close familial relationship, the expressions that I believe were credible from John[ny] that he loved and loves Francisco and Ramona, and that they loved him as part of their family and, of course, together with Noel and Arlene, joined as part of the family unit. And that Francisco was happy and grateful that John[ny] had come into the family, the unit – the family circle to aid, support, love, and be there for Arlene and her children.

The judge found defendants' testimony about the family's dynamic credible, including the history of plaintiffs and defendants helping each other. We owe those findings deference, especially because they are supported by the evidence in the record.

Although, at one point during his ruling the judge said undue influence "certainly [had] not been proven, even by a preponderance of the evidence[,]"

14

this was harmless error because the clear and convincing evidence in the record showed the $50,000 was paid voluntarily and without deception. Because the trial judge correctly found no basis to impose a constructive trust, he likewise did not err by declining to transfer title of the Hamburg property to plaintiffs.

B.

We reject plaintiffs' argument that the amount of the award did not adequately compensate for defendants' unjust enrichment. "To prove a claim for unjust enrichment, a party must demonstrate that the opposing party 'received a benefit and that retention of that benefit without payment would be unjust.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 288 (2016) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007)). "That quasi-contract doctrine also 'requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" Ibid. (quoting Iliadis, 191 N.J. at 110).

The trial judge awarded plaintiffs the $50,000 as restitution. He reasoned the award was "an equitable remedy to restore the status quo ante, . . . to return the $50,000 back to [Francisco and Ramona]" because he understood that to be "the primary objective of the litigation, secondary to the objective of having the

A-3996-22

[c]ourt determine that the [Hamburg] residence was the property of [Francisco and Ramona], a proposition which [he] rejected for equitable reasons . . . ."

The evidence showed defendants did not benefit from the transaction with Francisco and Ramona, requiring them to disgorge more than the $50,000. The judge correctly found plaintiffs were not entitled to more, including the balance of the value of the Hamburg property because the evidence proved it would be inequitable to award plaintiffs more where defendants bore most of the expenses for both the Florida and Hamburg properties as well as the risk if those expenses were not paid. The trial judge's findings regarding the unjust enrichment claim were neither a mistake of fact nor a misapplication the law.

C.

Contrary to plaintiffs' assertions, the trial judge did not find a joint venture. In attempting to characterize the arrangement between the parties, the judge described it as a "concocted quasi[-]joint venture" and a "not-carefully-thought-out joint venture . . . ." However, other than these fleeting references, it is clear from the record the judge did not believe there was a joint venture. Moreover, the evidence in the record did not support such a finding.

"[A] joint [venture] is an undertaking usually in a single instance to engage in a transaction of profit where the parties agree to share profits and

16

losses." Wittner v. Metzger, 72 N.J. Super. 438, 444 (App. Div. 1962) (citations omitted). We have stated:

> A joint venture includes "some or all" of these elements: 1) a contribution by the parties of money, property, effort, knowledge, skill, or other assets to a common undertaking; 2) a joint property interest in the subject matter of the venture; 3) a right of mutual control or management of the enterprise; 4) an expectation of profit; 5) the right to participate in profits; and 6) limitation of the objective to a single undertaking.
>
> [Ernest Bock & Sons-Dobco Pennsauken Joint Venture v. Twp. of Pennsauken, 477 N.J. Super. 254, 266 (2023) (citing Fliegel v. Sheeran, 272 N.J. Super. 519, 524 (App. Div. 1994)).]

The facts in evidence showed the parties had no contract, let alone a mutual agreement to partner for a joint profit or benefit, or an agreement to share risk. The parties did not have a joint interest in the property or exercise mutual control over the enterprise. The trial judge rejected plaintiffs' assertion that Francisco believed he was owner of either the Florida or Hamburg property. As the judge noted, Francisco did not sign closing documents, apply for a mortgage, and "never put his neck out on the line in terms of risk, which is what you do when [you] take on a mortgage."

### D.

Finally, plaintiffs' breach of fiduciary duty claim was properly dismissed.

A-3996-22

A party alleging a breach of fiduciary duty must establish the existence of a fiduciary relationship. Namerow v. PediatriCare Assocs., LLC, 461 N.J. Super. 133, 146 (Ch. Div. 2018). "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." F.G. v. MacDonell, 150 N.J. 550, 563 (1997).

A breach of fiduciary duty is a theory in tort. In re Est. of Lash, 169 N.J. 20, 27 (2001). The "fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship." McKelvey v. Pierce, 173 N.J. 26, 57 (2002) (citing Restatement (Second) of Torts ¶ 874 (1979)). "The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care." Ibid.

The trial judge found no fiduciary duty because John had not acted as Francisco and Ramona's real estate broker or financial planner, nor did he hold power of attorney on their behalf. Rather, John executed Francisco and Ramona's wishes. Even if John owed his parents-in-laws a duty, it was discharged rather than breached when he used the $50,000 to secure the Florida home and then acquired the Hamburg home while assuming the risk of a mortgage on the former home and bearing the expenses on the latter because of

the below market rent.  The record lacks any evidence of a breach by John let alone a resultant harm to Francisco and Ramona.

Affirmed.  The stay is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION